SWADLEY, by Next Friend, v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant*.

Division One, November 27, 1893.

1. **Fellow Servant:** RAILROAD. A track repairer of a railroad is not a fellow servant of employees in charge of regular freight and passenger trains.

2. **Railroad:** TRACK REPAIRER: TRESPASSER. A track repairer walking on the right of way with his foreman and other workmen after work hours to take a train for the next working place is not a trespasser.

3. ——: ——: NEGLIGENCE: PERSONAL INJURIES. Where through a negligently defective track or because the train is not run in an ordinarily safe and prudent manner a car jumps the track and injures such car repairer while standing on the side of the track, the company is liable.

4. ——: ——: CONTRIBUTORY NEGLIGENCE: PERSONAL INJURIES. Knowledge by the track repairer that the track is defective and his failure to get so far away from the track that a car jumping from it would not strike him do not show contributory negligence as a matter of law so as to defeat a recovery.

5. ——: ——: DEFECTIVE TRACK: EVIDENCE. Evidence of the defective condition of the ties within a reasonable time before and after the accident is competent as bearing on their condition at the time of the accident.

*Appeal from Moniteau Circuit Court.*—HON. E. L. EDWARDS, Judge.

AFFIRMED.

*H. S. Priest* and *W. S. Shirk* for appellant.

(1) Defendant's objection to the introduction of any evidence should have been sustained. The petition does not state a cause of action, for at least two reasons: *First.* It shows upon its face, that the servants running and operating the train which jumped the track and injured plaintiff, were fellow servants with plaintiff. *Summerbays v. Railroad*, 2 Col. 484; *Dow v. Railroad*, 8 Kan. 642; *Rohback v. Railroad*, 43 Mo. 187; *Whaaland v. Railroad*, 8 Ohio St. 249; *McGowan v. Railroad*, 52 Mo. 372; *Higgins v. Railroad*, 104 Mo. 413; *Schaub v. Railroad*, 16 S. W. Rep. 924; *Corbet v. Railroad*, 26 Mo. App. 621; *Murray v. Railroad*, 98 Mo. 573; *Sherwin v. Railroad*, 103 Mo. 378; *Harrison v. Railroad*, 79 Mich. 409; *Ely v. Railroad*, 48 N. W. Rep. 222; *Elliott v. Railroad*, 38 Am. & Eng. R. R. Cases, 62; *Parker v. Railroad*, 19 S. W. Rep. 119. *Second.* It shows upon its face that plaintiff was walking along

the defendant's right of way, going to a station; that he was not a passenger upon defendant's train, nor was he engaged in the performance of any duty toward defendant, and that defendant owed him no duty whatever, as to the rate of speed of its trains, nor the condition of its roadbed or track. And this is true, even if we admit that he was upon the right of way, at the time, as an employee. *McKenna v. Railroad* (K. C., Ct. App.); *Henry v. Railroad*, 8 Am. & Eng. R. R. Cases (Mich.), 110, on 112: *Railroad v. Schertle*, 2 Am. & Eng. R. R. Cases (Penn.) 158, on 163; *Lucas v. Railroad*, 40 Fed. Rep. 566; *Richards v. Railroad*, 47 N. W. Rep. (Iowa) 63. (2) Defendant's demurrer to the evidence should have been sustained. *Railroad v. Brick*, 21 Am. & Eng. R. R. Cases (N. Y.), 605; *Rosenbaum v. Railroad*, 34 Am. & Eng. R. R. Cases (Minn.) 274; *Tuttle v. Railroad*, 122 U. S. 189; *Ward v. Bonner*, 15 S. W. Rep. 805. (3) Plaintiff's evidence having wholly failed to show or explain the cause of the accident, he cannot recover. *Elliott v. Railroad*, 67 Mo. 272; *Murphy v. Railroad*, 71 Mo. 202; *Bowen v. Railroad*, 95 Mo. 268; *Minty v. Railroad*, 41 Am. & Eng. R. R. Cases, note on 554. So far as the plaintiff's evidence goes, the jury are left to grope in the dark as to the cause of the accident. And unless the cause of the accident was shown by the evidence the jury could not say it was brought about by defendant's negligence. *Railroad v. Searley*, 25 Am. & Eng. R. R. Cases, p. 358.; *Lucas v. Railroad*, 40 Fed. Rep. 566; *Railroad v. Smith*, 38 Am. & Eng. R. R. Cases; *Sauer v. Oil Co.*, 9 S. Rep. 566. (4) The court should have given defendant's instruction, at the close of all the evidence, to the effect that under the pleadings and all the evidence, the plaintiff was not entitled to recover. (See authorities cited to point 2, *supra*. (5) It was error to permit the witness Atkinson to testify as to the con-

·dition of the ties, on the first of August, nearly a month before the accident, especially as it had been already shown, by the plaintiff's own evidence, that the track had been repaired only a few days before the accident and that witness did not know what the con-·dition of the track was on the first day of September. *Stewart v. Ewing*, 44 Am. & Eng. R. R. Cases, 313. (6) It was error to give plaintiff's first and second instructions.    There is not sufficient evidence on which to base them.

*W. M. Williams*, *J. H. Johnston* and *J. E. Hazell* for respondent.

(1)  The testimony showed that Reed was the foreman and had authority to direct the movements of the men under him.   He was the representative of the defendant company and the orders given by him were the orders of the defendant itself.   The plaintiff was at the place of the accident by orders of the defendant and was not a trespasser, but was there in the discharge ·of his duty as a servant of defendant.   *Sullivan v. Railroad*, 107 Mo. 66; *Cox v. Granite Company*, 39 Mo. App. 424; *McDermott v. Railroad*, 87 Mo. 285; *Dowling v. Allen*, 89 Mo. 299; *Moore v. Railroad*, 85 Mo. 588. (2)  The plaintiff being upon the right of way in the discharge of his duty, as an employee of the defendant, :said defendant is liable to him for injuries sustained in ·consequence   of its carelessness and   negligence in having and maintaining its track in such a condition ·that it was not reasonably safe and secure.   *Stoher v. Railroad*, 91 Mo. 509; s. c., 105 Mo. 192; *Porter v. Railroad*, 75 Mo. 66; *McPherson v. Railroad*, 97 Mo. ·253; *Dayharsh v. Railroad*, 103 Mo. 570; *Wash v. Railroad*, 52 Mo. 434.   (3)  It was not necessary for plaintiff to introduce experts to show the cause of the

accident.   The evidence showed the condition of the
track, and rate of speed of the train, and all the circum-
stances  connected therewith.   The triers of the fact
were  authorized  to  draw  all  reasonable  inferences
authorized by the evidence.   *Bowen v. Railroad,* 95
Mo. 268; Pierce on Railroads, p. 317.   (4)   There was
no error in admitting the  testimony of the witness
Atkinson as to the condition of the ties in the defend-
ant's roadway at the place of the accident about three
weeks  before  it  occurred.   The  plaintiff's evidence
showed that there had been no change in the character
of the ties.    There were no  new  ties put in the track
between the time of which Atkinson testified and the
time of the accident.    *Stoher v. Railroad,* 91 Mo. 509-
517; *Sidekum v. Railroad,* 93 Mo. 400.   (5)   The
plaintiff was not a fellow servant of the men who were
in charge of the passenger train that was thrown from
the track and by which the plaintiff was injured.
*Dixon v. Railroad,* 19 S. W. Rep. 412; Pierce on Rail-
roads, 379; *Stettler v. Railroad,* 46 Wis. 479.   (6)   It
cannot be said that the plaintiff was guilty of negli-
gence in walking along the right of way of the rairoad,
and at a  reasonable  distance from  the track, even
though he knew the condition of the ties.   It was the
duty of the defendant to have its roadway in a reason-
ably safe condition, and it is liable for all damages
resulting from its failure to perform this duty.   There
was nothing in plaintiff's conduct or actions that a
reasonably prudent person would not under like cir-
cumstances have done.

BLACK, P. J.—The plaintiff, a young man under
the age of twenty-one years, prosecutes this suit by
his next friend to recover damages for personal injuries.
There is no dispute as to the following facts:

The  plaintiff  was  one of a  gang of six or eight

men, engaged in repairing the track of the defendant's branch road from Tipton to Boonville, all under the control of David Reed, their foreman.   On Saturday, the day of the accident, they were engaged in loading old rails on what is called the work train.   They ceased work between five and six o'clock in the afternoon, a little earlier than usual, and went to their boarding house which was close to what is called the McAllister crossing, for their supper.   In the meantime the work train went north to Boonville, to clear the track for a regular passenger and freight train, which was known to be about two hours behind its usual time.   After supper Reed and his gang got their valises, intending to get upon the work train when it came back and go to Tipton, and from there to California on the main line, where they were to commence work on Monday morning.   They all concluded to walk from the McAllister crossing south to a station called Speed, and there take the work train.   While walking along the track they saw the passenger and freight train coming from the south, and they all stepped from the track to the right of way, some going on one side of the track and some on the other.   As the train was passing them some of the cars were thrown from the track onto the plaintiff and others, killing at least two of the men and injuring the plaintiff.   There was a sharp curve at this point.

The plaintiff founds his action on these averments, namely: That he was on the right of way by order of his foreman; that the defendant negligently suffered its road bed and track thereon to become unsafe and dangerous at the point of the accident, in these respects: the ties were decayed and rotten, the rails were badly worn and not properly fastened to the ties, and the outer rail of the curve did not have sufficient

elevation; that the passenger and freight train was run and operated at a dangerous and reckless rate of speed; and that the cars were thrown from the track and upon plaintiff because of the unsafe condition of the track and dangerous rate of speed of the freight and passenger train.

The evidence of the plaintiff is very strong to the effect that Reed ordered his men to go from the McAllister crossing to Speed and pick up the tools as they went along and take the work train at that place for California, and that they walked along the track as they did because of the order of Reed, their foreman. On the other hand Reed says he told his men they would get their supper and wait at the crossing for the train, and this was the order he had from the division superintendent. He says when they got to the crossing, he or some of the men suggested that they walk down to Speed and get on the train at that place, and accordingly they all started for Speed, walking on the track. Says he was not on duty at that time, it being after six o'clock.

There is much evidence tending to show that the ties were from two to two and a half feet apart, that some of them were of the usual size and others smaller, that many of them were rotten so they would not hold a spike, and that the lines of the track varied from right to left and the rails were not level on top. Other evidence shows that the plaintiff and his gang replaced the inner rail of the curve with steel rails a few days, less than a week, before the accident. The steel rails were rails which had been used on the main track. The outside rail of the curve was steel and had been down a much longer time. The defendant's evidence is that a gang of men went over this track three or four weeks before the accident and put in some new ties, that while most of the ties had been in the ground

some years, they were reasonably sound. In short the defendant's evidence and some of that produced by the plaintiff tends to show that this roadbed and track was in as good a condition as branch roads are usually kept.

According to most of the witnesses the train was going from twenty-three to thirty miles per hour, and the evidence of those in charge of it is that the same train had been run that fast over this part of the road before the accident and has been run as fast since then. One witness who was a passenger says the train was running as fast as thirty-five miles per hour, and another one says it was running twice as fast as he ever saw it run before, and that one of the freight cars was thrown thirty or forty feet from the track.

It appears the car which caused the wreck left the track just as the train passed through the curve. Several witnesses say it had one wheel broken off, and the break at the axle had the appearance of being a fresh one. They gave it as their opinion that this break caused the wreck. They say such accidents occur without any apparent cause.

The chief complaints made on this appeal by the defendant arise out of the rulings of the trial court, in overruling the defendant's objection to the introduction of any evidence because the petition failed to state facts sufficient to constitute a cause of action.; and in overruling the defendant's demurrer to the plaintiff's evidence.

1. The first of these objections made here is, that the plaintiff and those in charge of the passenger and freight trains were fellow servants within the rule which exempts the master from liability where one servant is injured by the negligence of a coservant. This objection has nothing to do with the plaintiff's cause of action so far as it is founded on a defective roadbed

and track. The objection, however, was not well taken in any point of view or at any stage of the trial. It is true all servants of the same master are *prima facie* coservants within the rule, but the conceded and unquestioned facts in this case show affirmatively that the plaintiff was engaged in repairing the track under the orders of his foreman. The train was a regular freight and passenger train, under the command of a conductor. These facts show that the plaintiff and those in charge of the train were not fellow servants, under our rulings. There are cases where it will become necessary to submit the question to the jury, but that is not the case here. All the facts bearing upon the point are conceded.

This case is unlike the *Parker case*, 109 Mo. 362. There the train was engaged in hauling ballast which Parker and others placed upon the track. The evidence was not clear as to what, if any, relation existed between the track repairers and trainmen. Here the facts which take the plaintiff out of the rule as a matter of law, are conceded.

2. It does not follow that the plaintiff was a trespasser because he was on the right of way after the usual working hours. He was there with the foreman and the other members of his gang, all going to the station to take the work train for the next working place, and there is an abundance of evidence tending to show that the plaintiff and others went down to the track to the station pursuant to the orders of their foreman, for the purpose of gathering up the tools on the way. Under these circumstances this court cannot say plaintiff was a trespasser. No case cited has any tendency to justify such a ruling.

But it is said the defendant owed the plaintiff no duty, either as to the condition of its track or the speed of the train, even if he is to be deemed and treated as

an employee, and for this reason the demurrer to the evidence should have been sustained. To this. proposition we do not agree. It is certainly the duty of the master to use reasonable care in supplying his servants with reasonably safe machinery and appliances, and to use reasonable diligence in keeping them in repair. And the plaintiff not being a coservant with those in charge of the train and being an employee, it was the duty of the defendant to use ordinary care in running the train. The rule upon both of these propositions is correctiy stated in the instructions given in this case at the request of the defendant. It is there in substance stated, that if the plaintiff was on the side of the track by order of the section boss, and the car jumped the track and fell upon him, still he could not recover, if the track was in an ordinarily safe condition, and the train was being run in an ordinarily safe and prudent manner.

3. There was certainly an abundance of evidence tending to show that the track was in an unsafe condition, by reason of rotten ties and rails insecurely fastened, and that in view of this condition of the track, the train was running at a negligent rate of speed. From the circumstances put in evidence, the jury could well draw the conclusion that the cars left the track for one or the other of these reasons, or both combined. It is true there is evidence tending to show that the wreck was caused by a broken axle, and there is also evidence tending to show that the axle was broken by reason of the speed of the train over a rough road. These points are, however, covered by instructions given at the request of the defendant.

But it is said the plaintiff ought not to recover because he had within a week assisted in taking up the old rails and in putting down others at this place, and therefore knew of the condition of the track, and hence

assumed all risks arising from its defective condition. The fact that he knew of the defective condition of the track was a circumstance going to show that he was guilty of contributory negligence in not getting further away from the track when the train passed him, but it does not, in and of itself and as a matter of law, defeat a recovery.   Mere knowledge that the appliance is defective and that risk is incurred in its use, will not, as a matter of law, defeat the servant's action where the danger is not such as to threaten immediate injury or where it is reasonable to suppose the appliance may be safely used by the use of care and caution.   *Hamilton v. Rich Hill Coal Mininy Co.*, 108 Mo. 364, and cases cited.

4. William Atkinson, a witness for plaintiff, stated that he passed over the road from the first to the seventh of August, 1881.   The accident in question occurred on the first of September of that year.   The witness then stated, over the objections of the defendant, that the ties were in a bad condition, which condition he described.   On cross-examination he said he did not know what condition the ties were in on the first of September.

The defendant objected to the evidence of this witness for two reasons; *first*, because it then appeared in evidence that the track had been repaired only a few days before the accident; and, *second*, because the condition of the track from the first to the seventh of August was immaterial.

At the time this witness was called, the plaintiff's evidence showed that the track had been repaired by placing a steel rail on the inside of the curve, but there was no evidence to show that any change had been made in the ties.   Indeed, two of the witnesses being section men belonging to plaintiff's gang, had testified that they did nothing with the ties; that they laid the

rails down on the old ties.    There is, therefore, nothing in the first objection to call for further observation.

With respect to the other objection it is to be observed that the inquiry was, what was the condition of the ties at the time of the accident?    But it was not necessary that the witnesses should be able to speak of the condition of the ties on that very day.    Evidence of the condition of the ties within a reasonable time before or after the accident was competent.    The limitation to such evidence is that it must be such, in character and point of time, as to justify the inference that the ties were in a bad condition at the time of the accident.    *Stoher v. Railroad*, 91 Mo. 509.    Indeed it was said in *Stewart v. Everts*, 44 Am. & Eng. R. R. Cases, 313, the case, and only case, to which we are referred by appellant: "The mere fact that the road was repaired at that place six months after the accident, would not in itself be competent evidence tending to show that it was out of repair when the accident happened; but if, in making such repairs, it was found that the ties were in such a state of decay as to fairly lead to the conclusion that they were in a decayed state when the accident happened, or that the condition of the roadbed was such as would fairly tend to prove that it was not in a safe condition when the accident happened, such evidence would be clearly admissible.    Its weight would be a question for the jury."    It was, of course, open to the defendant to show that the road had been repaired by putting in new or sound ties before the accident happened.

The objections, and only objections, made to the instructions have been answered by what has been said.    The judgment is affirmed.    BARCLAY, J., absent. The other judges concur.