CHARLES F. WESTLAKE, APPELLEE, v. HUGH MURPHY, APPELLANT.

FILED SEPTEMBER 25, 1909.  No. 15,756.

1. **Master and Servant:** LIABILITY OF MASTER. Workmen engaged in the ordinary occupation of unloading a railroad car under the direction of a common overseer, are fellow servants within the rule announced in *Chicago, B. & Q. R. Co. v. Kellogg,* 54 Neb. 127; and the master is not liable for an injury to one engaged in such occupation caused by the negligence of a competent fellow servant.

2. ———: ASSUMPTION OF RISKS. A servant assumes ordinary risks and dangers of the employment upon which he enters, so far as

they are known to him, and so far as they would have been known to one of his age, experience and capacity by the use of ordinary care; and he is bound to take notice of the ordinary operation of the familiar laws of gravitation, and assumes the risks necessarily incident thereto.

3. ———: Duty of Master. An air pump while being unloaded from a railroad car, and which is to be set up for use in a plant to be erected for the purpose of preparing material for street paving, is not an appliance within the meaning of the rule which requires the master to exercise reasonable care in furnishing his servants with reasonably safe appliances with which to carry on the master's business.

Appeal from the district court for Lancaster county: Lincoln Frost, Judge. *Reversed*.

*Strode & Strode,* for appellant.

*Tibbets & Anderson, contra.*

Barnes, J.

Action to recover damages for personal injuries alleged to have been sustained by reason of the negligence of the defendant. Plaintiff had a verdict and judgment, and the defendant has appealed.

The following facts may be considered established beyond dispute: The defendant was a contractor engaged in the business of constructing brick, concrete and asphalt pavements. In the year 1906 he had a contract with the city of Lincoln to construct a large amount of pavement on the streets of that city. Plaintiff was employed by the defendant as a common laborer, and at the time of the injury complained of he, together with several other fellow laborers, was engaged in the work of unloading a freight car which had been hauled from Omaha to the city of Lincoln, and which contained a large number of barrels of asphalt, cement, oil and certain pieces of machinery, together with other things commonly used in the paving business. Among the articles contained in the car was a large iron pump weighing about 1,000 pounds. Plaintiff was injured while assisting a fellow laborer in an attempt

to change the position of the pump, which fell upon and injured his leg. He alleged in his petition that the defendant negligently failed to provide a safe place for his servants to work; that the appliances furnished by the defendant were defective; that at the time of the injury the defendant's foreman was negligently absent from the car in which the work was being done. Defendant answered, denying negligence of any kind on his part, and alleging contributory negligence on the part of the plaintiff. The defendant pleaded as a further defense that at the time of the injury the plaintiff and his fellow servants were attempting to move the pump in question in direct disobedience of the foreman's orders, and, if there was any negligence in the handling of the pump, it was the negligence of the plaintiff himself or his fellow servants, for which the defendant was not liable.

Defendant contends that the verdict is not sustained by the evidence. In addition to the facts above stated, the plaintiff testified that all of the persons who were working with him at the time the accident occurred were fellow laborers engaged in the same work, for a common purpose, and under the instructions of the same master. Therefore they were all within the rule which exempts the master from liability for the negligence of competent fellow servants. There is no evidence in the record which shows or tends to show that the defendant was negligent in the employment of the plaintiff's fellow servants, therefore their competency must be presumed. Plaintiff also testified that, while the car which contained the pump in question was being unloaded, their foreman, Atchison, was supervising the work, and was dividing his time between the car and the plant which was being installed near another track about 150 feet from the car; that at the time of the accident he was not present, and had been absent from the car about an hour; that theretofore the foreman had assisted in moving the pump from the top of the barrels of asphalt to the floor of the car; that they were unloading the north end of the car when a fellow workman

by the name of Lewis attempted to move the pump, and asked him to steady it; that, while they were so engaged, the pump fell over on his leg and inflicted the injury complained of.

Plaintiff claims that the pump was placed in such a position that it was necessary to move it before the barrels of asphalt, which were in the north end of the car, could be unloaded; and that this, together with the absence of the foreman, constituted actionable negligence on the part of the defendant. On this point the testimony shows beyond question that after the pump was placed on the floor, and the south end of the car was unloaded, the workmen had been engaged for at least an hour in unloading the barrels of asphalt from the north end of the car; and plaintiff practically admits this, but insists that there was not sufficient room to get the barrels between the pump and the east side of the car. His witnesses, however, do not sustain him on this point. Even his principal witness, Stransky, says that they had been taking barrels from the north end of the car and rolling them out of the east door for about an hour before the accident occurred. On this point he testified as follows: "Q. And you worked out there an hour and a half while they were rolling barrels out of the north end of the car before Mr. Westlake got hurt, didn't you? A. Yes, sir." Defendant's foreman and the other workmen testified that there was plenty of room between the pump and the east side of the car to roll the barrels out of the east door. So it may be said that at most the moving of the pump was a matter of convenience and not one of necessity. We are therefore of opinion that there is nothing in the evidence which takes this phase of the case out of the rule that the master is not liable for the negligent acts of competent fellow servants. *Chicago, B. & Q. R. Co. v. Kellogg*, 54 Neb. 127; *Swadley v. Missouri P. R. Co.*, 118 Mo. 268, 24 S. W. 140; *Wright v. New York C. R. Co.*, 25 N. Y. 562; *Adams v. Iron Cliffs Co.*, 78 Mich. 271; *Justice v. Pennsylvania Co.*, 130 Ind. 321.

**Again, plaintiff** by accepting employment with the defendant assumed all the risks of injury caused by the negligence of competent fellow servants, by the dangers arising from the existing conditions, including machinery, appliances, etc., which were known or apparent and obvious to persons of his experience and understanding. This rule is well settled both by the laws of England and of this country. *Evans Laundry Co. v. Crawford,* 67 Neb. 153; *Fremont Brewing Co. v. Hansen,* 65 Neb. 456; *Haviland v. Kansas City, P. & G. R. Co.,* 172 Mo. 106; *Broderick v. St. Paul City R. Co.,* 74 Minn. 163; *Wahlquist v. Maple Grove Coal & Mining Co.,* 116 Ia. 720; *Mad River & L. E. R. Co. v. Barber,* 5 Ohio St. 541.

Plaintiff, however, insists that the defendant was guilty of negligence, in that he failed to furnish him with safe appliances and a reasonably safe place to work, and he introduced some testimony tending to show that the pump in question was insecurely fastened to the plank on which it rested, and as a result slid off and injured him. The pump while being moved was not an appliance furnished by the defendant for use by the plaintiff or any of his fellow servants within the rule which requires the master to furnish his servants with reasonably safe tools and appliances with which to perform their work. The pump was not to be used by the plaintiff or his fellow servants in the work in which they were then engaged. It, like the barrels of asphalt, and the other property and tools, was to be unloaded from the car. When taken out of the car and put in place for use, it would then become an appliance, and, while being used, any defect therein which the defendant by the exercise of reasonable care could have discovered, and which the plaintiff by the exercise of such care would not have discovered, might then be made the basis of an action to recover on account of the failure of the master to furnish reasonably safe appliances. To unload the pump was a part of the work of unloading the car. The asphalt barrels and the pump were a part of the materials to be unloaded. Neither of them were the tools,

instruments or appliances to be used by the plaintiff or his fellow servants in unloading the car. Therefore the rule with respect to safe appliances has no application to the facts of this case. It is true that the work of unloading the pump because of its weight and condition was more or less dangerous, but the plaintiff was charged with the knowledge of that danger. He was a man 45 years of age, and accustomed to that kind of work. He knew the condition of the pump, was aware that it was top-heavy, and liable to tip over and injure those engaged in moving it. He had assisted in loading and unloading it before, and was fully aware of all of the dangers incident thereto. It was not necessary for the master to instruct him as to that matter, and the law presumes that he knew as much about the dangers incident to that part of his employment as did the master himself. The fact that the negligent act of a fellow servant caused it to tip over and injure the plaintiff did not render the defendant guilty of actionable negligence.

Finally, it is claimed by the defendant that the plaintiff was injured while acting in direct disobedience to his master's orders, and therefore he cannot recover. This point is the only one on which there is any material conflict in the evidence. Considering the condition of the record, we think this question is not material, and therefore it will receive no further attention.

For the foregoing reasons, we find it impossible to sustain the judgment of the trial court. It is with much reluctance that we have reached this conclusion, for it is apparent that the plaintiff, by reason of the accident in question, has sustained much suffering and considerable damage; but, as the record now stands, we are unable to afford him any relief. The judgment of the district court is therefore reversed and the cause is remanded for further proceedings.

REVERSED.

REESE, C. J., and FAWCETT, J., not sitting.