## SUSAN A. LEE et al. v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

In Banc, March 30, 1906.

1. **PLEADING: Cause of Action Based on Laws of Foreign State: Untimely Objection.** Where one relies on the laws of a foreign State for his cause of action, he is required to state in his pleading what the law of that State is. Such law is to be both pleaded and proven. But where no timely objection is made to the pleading that it does not set forth the statute, but that objection is made for the first time after the trial has begun, it will be overruled if the petition is susceptible of a construction that will constitute a cause of action.

2. **PARTIES: Cause Accruing in Kansas: Suit by Wife: Trustee for Children.** The Kansas statute confers the right on the widow to sue for the death of her husband from the wrongful act of another in that State, when no administrator has been appointed, and our statute says that if the statute of another State confers the right on her to sue there she may sue in the courts of this State. *Held,* that, as no administrator has been appointed, the widow may maintain a suit here for the negligent killing of her husband in Kansas. *Held,* also, that, notwithstanding the statute of Kansas declares that the damages inure to the exclusive benefit of the widow and her children, it is not necessary for the widow to have herself appointed trustee for the children and then as such trustee and in her own name bring the suit, for the statute authorizes her alone to sue, where no administrator has been appointed, for the benefit of herself and her infant children. Such appointment is an unnecessary precaution, but if made and suit is brought by her, both as trustee and in her own name, the fact that she brings it as trustee for the children does not invalidate the judgment.

3. **NEGLIGENCE: Switchman: Blocks Between Rails: Reasonably Safe Place: Contributory Negligence: Kansas Decisions: Question for Jury.** Deceased was one of the crew engaged in

switching cars in a yard at Atchison, Kansas, and while walk-
ing or running between cars in a train moving from four to
eight miles an hour, in the act of drawing the coupling pin with
one hand while holding to the handhold with the other, his
foot was caught in an unblocked space between a guardrail
and a track rail, the on-coming car pushed him down, broke
his hold on the handhold, and he was killed. The company
had adopted the blocking system, and had two yards in Kansas,
one of which was fully blocked. This one had been blocked but
the blocks had fallen into decay and become out of repair,
many of the blocks being worn out, rotten or had disappeared.
Deceased had been employed in the yards for several months,
but for twenty-one days had been absent, returning to work
only three or four days prior to the accident. The foreman
and another switchman did not remember whether the rails
in the immediate vicinity of the accident were blocked or not,
and gave the impression that in the hurry of their work they
had not time to look for blocks, but that one could have posted
himself as to the blocks if he had taken time to do so. *Held,*
that, under the decisions of the Kansas Supreme Court, the
court cannot declare, as a matter of law, either that the de-
ceased was guilty of such contributory negligence as bars re-
covery, or that he assumed the risks, but, guided by those de-
cisions, which in their application to the facts of this case, are
not inconsistent with our own, whether or not deceased knew
the danger he was incurring from the absence of the blocks,
was, under the evidence, a fair question for the jury. *Held,*
also, that the evidence was sufficient to justify the submission
of the question of negligence on the part of the defendant in
failing to furnish deceased a reasonably safe place in which
to work.

4. ———: Safeguarding Tracks: Blocking Rails: Evidence of
Custom. Evidence to show that other railroads in the same
town in which the deceased switchman's foot was caught be-
tween unlocked rails, had their rails blocked and safeguarded,
is not competent, but evidence of a general custom in well-equip-
ped railroad yards would be. But the admission of such evi-
dence is not prejudicial to defendant, where it is undisputed
that defendant had adopted that method.

5. ———: Instructions: Reference to Others: Not Distinctly De-
nominated. There was no instruction given expressly defining
the terms "assumption of risk" and "contributory negligence,"
but those given for defendant embraced all the facts that de-
fendant relied on to establish its defense on either of those
grounds, and directed a verdict for defendant if those facts
were found. *Held,* that an instruction for plaintiff which set

out the facts she relied upon and directed the jury that if they found those facts to be present their verdict must be for plaintiff "unless you further find and believe from the evidence that deceased assumed the risk of said injury, or was guilty of negligence on his part contributing to produce his death, as defined in other instructions given you," was not error. It cannot be said that there were no instructions given on the assumption of risk or contributory negligence.

6. ———: **Measure of Damages: Earnings and Expectancy.** The jury were told that in estimating plaintiffs' pecuniary loss caused by the death of their deceased husband and father they would fix "the sum at such sum as would equal the probable earnings of the deceased, taking into consideration his age, business capacity, experience, and his habits, health, energy and perseverance during what would probably have been his lifetime." Under the evidence his prospective earnings at the same wages for his life expectancy would be about $35,000, and the statute and instruction limited the recovery to $10,000. *Held*, that the instruction was not understood by the jury to be a direction to return a verdict for $10,000, as is seen by the fact that their verdict was $8,000; hence, while the instruction is not approved, the verdict is not reversed.

7. ———: **Defective Appliances: Knowledge.** Knowledge of a defect in the appliance does not bar a recovery. Where the servant has knowledge of the defect, the question yet remains whether the defect is such that he may reasonably hope to use it by exercising ordinary care.

8. ———: **Coupling Cars: Remaining Between Cars: Slow Movement.** It was the usual custom of switchmen to go between moving cars to pull the coupling pin, and the printed rule of the company authorized them to do so when the train was moving slowly, and the train was moving at what railroad men call a slow rate. *Held*, that the court was not authorized to declare, as a matter of law, that plaintiff could not recover for injuries to the switchman whose foot caught between the guardrail, if he remained between the cars, in an attempt to remove the coupling pin, while they were going 150 to 200 feet, or while they were moving three or four car-lengths.

Appeal from Jackson Circuit Court.—*Hon. Edw. P. Gates*, Judge.

AFFIRMED.

*Elijah Robinson* for appellant.

(1) The court should have sustained defendant's objection to the introduction of any evidence under plaintiffs' petition. It was nowhere alleged in said petition that the deceased, if death had not ensued, could have maintained an action under the laws of the State of Kansas, where the accident occurred, for the acts and omissions complained of. 8 Am. and Eng. Ency. Law (2 Ed. ), 881; Debevoise v. Railroad, 99 N. Y. 377; Hamilton v. Railroad, 39 Kan. 56. (2) Plaintiffs have no legal capacity to maintain this suit. At common law no one could maintain an action on account of the death of another. 3 Ell. Ry. Law, sec. 1359; Loague v. Railroad, 91 Tenn. 458. If any right of action exists, it is by virtue of the statute of Kansas; and that statute being in derogation of the common law, must be strictly construed. 3 Ell. Ry. Law, sec. 2146; Jackson v. Railroad, 87 Mo. 442; White v. Maxey, 64 Mo. 559; Proctor v. Railroad, 64 Mo. 128; Sutherland's Stat. Con., sec. 371. The action is maintainable by the person who is, by the terms of the Kansas statute, authorized to maintain it, and by no one else. Proctor v. Railroad, 64 Mo. 119; Connor v. Railroad, 64 Mo. 117; McNamara v. Slavens, 76 Mo. 330; Gibbs v. Hannibal, 82 Mo. 149; Barker v. Railroad, 91 Mo. 86; Gray v. McDonald, 104 Mo. 311; Miller v. Railroad, 109 Mo. 359; Hennessey v. Brewing Co., 145 Mo. 112; McGinnis v F. & C. Co., 174 Mo. 225; Hamilton v. Railroad, 39 Kan. 56; Eureka v. Merrifield, 53 Kan. 794; Thornburg v. Straw Board Co., 141 Ind. 445; Chevis v. Rogers, 50 La. Ann. 57; Tel. Co. v. McGill, 57 Fed. 701; Usher v. Railroad, 126 Pa. St. 206; 3 Ell. Railroad Law, sec. 368; Miller v. Railroad, 55 Ga. 143; 5 Ency. P. and P., 889. Under the statute of Kansas the widow, and the widow alone, and no one else, could maintain the suit. Secs. 418 and 419, art. 18, chap. 95, G. S. (Kan.) 1897. But under the deci-

sions of this court the provisions of the Kansas statute could not be enforced in the courts of this State prior to the act of 1891. Vawter v. Railroad, 88 Mo. 674; Oates v. Railroad, 104 Mo. 514; McGinnis v. Mo. C. & F. Co., 174 Mo. 225. Under the act of 1891 the widow cannot maintain this suit alone, because she is not the sole beneficiary. Secs. 547, 548, R. S. 1899. The children have each an equal interest with the widow in the proceeds. They are represented by a trustee, without whom, under the Misouri statute, the suit could not be maintained, but under the statute of Kansas no right of action is vested in the trustee; and the Legislature of Missouri could not legislate for the State of Kansas, could not change or modify the law of that State, could not vest the right of action in a person different from the person in whom it is vested by the statute of Kansas. (3) The case is governed by the law of Kansas. Plaintiffs can have no cause of action unless deceased could, if death had not ensued, have maintained an action for the injury sustained, and the question as to whether he could have maintained such an action is governed by the law of Kansas. Fogarty v. Transfer Co., 79 S. W. 664; Turner v. Tunnel Co., 11 Mich. 578; Bridger v. Railroad, 27 S. C. 456. (4) Deceased assumed the risk of injury from the unblocked guardrails, and therefore plaintiffs cannot recover. He was an experienced railroad man, of more than average intelligence, perfectly familiar with the yard in which he was employed and with the danger from unblocked guard rails, and by continuing in the service of the defendants must be held to have assumed the risk of injury incident to the then existing conditions. Rush v. Railroad, 36 Kan. 129; Weld v. Railroad, 39 Kan. 68; Railroad v. Schroeder, 47 Kan. 315; Clark v. Railroad, 48 Kan. 654; Railroad v. Monden, 50 Kan. 539; Sweet v. Railroad, 65 Kan. 812; Walker v. Scott, 67 Kan. 814. (5) Deceased was guilty of contributory ngeligence, without which the accident would not have

occurred, and therefore plaintiffs cannot recover. He went in between the cars, while in motion, when it was not necessary to do so. The cars were on a curve, the couplings were of different patterns, and the pin was fastened, all of which he could have ascertained without going between the cars. He was between the cars a distance of from 150 to 200 feet, while they were moving from four to six or eight miles an hour, and he was running at the time the accident occurred. Towner v. Railroad, 52 Mo. App. 648; Caldwell v. Railroad, 80 S. W. 897; Marsh v. Railroad, 56 Ga. 274; Williams v. Railroad, 43 Iowa 396; Railroad v. Estes, 37 Kan. 731; Railroad v. Tindall, 57 Kan. 719; Sweet v. Railroad, 65 Kan. 812; Carrier v. Railroad, 59 Pac. 1075; Lothrop v. Railroad, 150 Mass. 423; Culbertson v. Railroad, 88 Wis. 569; Burk v. Edison Co., 89 Hun 501; 1 Bailey Per. Inj., sec. 1121; Gilbert v. Railroad, 128 Fed. 529; Morris v. Railroad, 47 C. C. A. 661; Coal Co. v. Reid, 29 C. C. A. 475; McCain v. Railroad, 22 C. C. A. 99; Gleason v. Railroad, 19 C. C. A. 636; Russell v. Tillotson, 140 Mass. 201. (6) There was no evidence of negligence on the part of the defendant. The simple fact that the guardrail was not blocked and that the accident occurred, does not show negligence on the part of the defendant. Gilbert v. Railroad, 128 Fed. 529.

*Frank P. Walsh, Rozzelle, Vineyard & Thacher* and *John G. Park* for respondents.

(1) An allegation that "deceased, if death had not ensued, could have maintained an action under the laws of the State of Kansas," would have been a legal conclusion. The facts were fully stated, and the amended petition showed a cause of action. Gurney v. Railroad, 13 N. Y. Supp. 645; affirmed, 59 Hun 625. Plaintiffs have legal capacity to sue. (2) (a) The damages inure to the exclusive benefit of the widow and children. Statutes of Kansas, secs. 418, 419. The widow

was entitled to bring this action in her own name, there being no administration. R. S. 1899, sec. 547. The widow was entitled to bring the action on behalf of the children, as trustee of an express trust. Jones v. Railroad, 178 Mo. 528. There can now be no doubt of the plaintiffs' capacity to sue. The following decision is on all fours with this case, as to place of death, capacity of plaintiffs and law applicable: Jones v. Railroad, 178 Mo. 528. (b) Under the law of Kansas the widow would have had the right to sue in Kansas in her own name. She would have been sole plaintiff. Kansas Statutes, secs. 418, 419. She is also a proper and necessary party plaintiff under the law of this State. R. S. 1899, secs. 547, 548. Defendant objects that Mrs. Lee, as trustee for the children, was erroneously joined as plaintiff. This objection appeared upon the face of the amended petition and could only be raised by demurrer. Jones v. Railroad, 178 Mo. 538; R. S. 1899, secs. 598, 599; Spillane v. Railroad, 111 Mo. 562. The point could be preserved only by standing on the demurrer, and declining to plead to the merits. Jones v. Railroad, 178 Mo. 539. By answering to the merits, defendant waived all objections to the joinder of the plaintiffs. Jones v. Railroad, 178 Mo. 539; Paddock v. Somes, 102 Mo. 235; Elfrank v. Seiler, 54 Mo. 136; Donahue v. Bragg, 49 Mo. App. 276; Spillane v. Railroad, supra; State to use v. Sappington, 68 Mo. 457; Ware v. Johnson, 55 Mo. 504. (3) The law of evidence is the *lex fori* and the Kansas law is therefore immaterial. Appellant's assertion that Mrs. Lee could not have recovered in Kansas is a mere gratuity and unsupported by the record. There is no evidence in the record that Mrs. Lee could not have maintained an action in Kansas, or that she was ever so advised. The presumption concerning the law of sister states is that it is the same as our own. Wilson v. Cockrill, 8 Mo. 7; Houghtaling v. Ball, 19 Mo. 86; Barhydt v. Alexander, 59 Mo. App. 194; White v. Chaney, 20

Mo. App. 396; Silver v. Railroad, 21 Mo. App. 5. The law of another State, if claimed to be different from our law, must be pleaded and proved. McDonald v. Life Assn., 154 Mo. 628; Flato v. Mulhall, 72 Mo. 525; McClain v. Abshire, 63 Mo. App. 341; Bath Gas Co. v. ·Claffy, 151 N. Y. 24; Sloan v. Torry, 78 Mo. 625. Kan-sas decisions are cited by appellant to establish these propositions: first, that the failure of defendant to block the guardrail in question was no evidence of neg-ligence; second, that acceptance of employment by de-·ceased in defendant's yard was conclusive evidence that he agreed to the conditions, and that his continu-·ance in defendant's employ constituted conclusive evi-dence that he was familiar with all the conditions. ·''Rules of evidence to be applied in a cause of action ·are a part of the law of the remedy, and will be supplied by the *lex fori.*'' 22 Am. and Eng. Ency. Law (2 Ed.), 1385. ''The law of evidence is the *lex fori.* Whether ·a witness is competent or not, whether certain matters ·require to be proven or not, whether certain evidence ·proves a certain fact or not, are to be determined by ·the law of the country where the question arises, where ·the remedy is sought to be enforced, and where the court sits to enforce it.'' Bain v. Railroad, 3 H. L. ·Cas. 19. To the same effect are: Railroad v. Mitchell, ·92 Ga. 80; Story on Conf. of Laws (8 Ed.), 855, 856; Hoadley v. Transp. Co., 115 Mass. 304; Jones v. Rail-road, 80 Minn. 488; Penna. Co. v. McCann, 54 Ohio ·St. 10. Questions pertaining to the law of negligence ·are questions of general law, in which the court of the forum is not bound to follow the doctrines of the local ·courts where the cause of action arose. Railroad v. Baugh, 149 U. S. 368; Hough v. Railroad, 100 U. S. ·226. The decision principally relied on by defendant, Rush v. Railroad, 36 Kan. 129, is not in point for sev-·eral reasons: (a) In the Rush case there never had been any blocking in the yard where Rush was killed. The court puts its decision on the ground that ''the

railway was not out of repair.'' The rule in the Rush case has been distinctly held inapplicable to a case where a railroad company furnished blocks and afterwards permitted them to fall into decay. Hunt v. Kane, 100 Fed. 256. (b) The opinion in the Rush case is predicated largely upon the proposition that ''all [the frogs] were constructed alike so far as blocking and other protection was concerned.'' The admitted facts in this case are that some of the intervals were blocked and some were not. Rush was killed in 1884, Lee in 1899. Such progress has been made in railroad construction that scarcely any appliance is measured by the standards of fifteen years ago. But the Rush case can no longer be regarded as the law in Kansas. Brinkmeier v. Railroad, 77 Pac. 586; Emporia v. Kowalski, 66 Kan. 64; O'Neill v. Railroad, 62 Neb. 358; Railroad v. Swarts, 58 Kan. 235; Bradshaw v. Railroad, 58 Kan. 618; Rouse v. Ledbetter, 56 Kan. 348. O'Neil v. Railroad, supra, is identical in facts with the case at bar. (4) It was a question for the jury whether or not defendant was guilty of negligence in failing to properly maintain the blocking. O'Neill v. Railroad, 62 Neb. 358, cited with approval in: Emporia v. Kowalski, 66 Kan. 64; Huhn v. Railroad, 92 Mo. 440; Hamilton v. Mining Co., 108 Mo. 364; Wells v. Railroad, 110 Mo. 297; Hunt v. Kane, 100 Fed. 256; Sherman v. Railroad, 34 Minn. 259; Trott v. Railroad, 115 Iowa 81; Coats v. Railroad, 62 Iowa 491; Curtis v. Railroad, 95 Wis. 460. It is clearly negligence for a railroad company to permit holes to exist in tracks into which the feet of employees may slip, thereby causing injury. Burdict v. Railroad, 123 Mo. 221; Hollenbeck v. Railroad, 141 Mo. 110; Railroad v. Sanders, 166 Ill. 270; Railroad v. Cozby, 174 Ill. 109; Railroad v. Morrissey, 177 Ill. 376; Hennessy v. Railroad, 99 Wis. 109; Rouse v. Ledbetter, 56 Kan. 348. (5) There was no assumption of risk by deceased. Lee worked at night. His co-workers testified that

they did not know whether the intervals were blocked or not. From this, the inference can very well be drawn that the absence of blocking was not known to Lee, and that he could not know it by the exercise of ordinary care. Alcorn v. Railroad, 108 Mo. 105. Trainmen are not chargeable, as a matter of law, with notice of the condition of the track upon which they work. It is a question for the jury whether they knew its condition. Waldheir v. Railroad, 87 Mo. 48; Porter v. Railroad, 60 Mo. 162; Dale v. Railroad, 63 Mo. 460; Soeder v. Railroad, 100 Mo. 673; Hollenbeck v. Railroad, 141 Mo. 97; Railroad v. Michaels, 57 Kan. 474; Railroad v. Rowan, 55 Kan. 270. Lee was "not bound to investigate for himself a department of work with which he had nothing to do, and set up his judgment against that of his master." Devlin v. Railroad, 87 Mo. 550. Layton, the foreman of the crew with which Lee worked, testified that he had nothing to do with blocking the yard or repairing the tracks, either as switchman or foreman. The authorities are to the effect that no switchman or brakeman can be expected to know the condition of every foot of track over which he operates. Railroad v. Hines, 132 Ill. 161; Trott v. Railroad, 115 Iowa 81; Fluhrer v. Railroad, 121 Mich. 212; Railroad v. Sanders, 166 Ill. 270; Hannah v. Railroad, 154 Mass. 533. Deceased did not assume the risk of injury arising from the negligence of defendant. Curtis v. McNair, 173 Mo. 280; Pauck v. Beef Co., 159 Mo. 467. This court holds the true rule to be that even where the servant knowingly incurs the risk of using defective machinery, still if it is not so defective as to threaten immediate injury, it is for the jury to say whether the servant was negligent in continuing to use the machinery. Minnier v. Railroad, 167 Mo. 113; Harff v. Green, 168 Mo. 314; Henderson v. Kansas City, 177 Mo. 491; Wendler v. Fur. Co., 165 Mo. 527; Herbert v. Boot Co., 90 Mo. App. 313; Huhn v. Railroad, 92 Mo. 440. And this is now the rule in Kansas. Brinkmeier v.

Railroad, 77 Pac. 586; Railroad v. Eversole, 69 Pac. 1126. (6) Deceased was not guilty of contributory negligence. Defendant's rule 23 required employees "not to go between the cars unless they are moving at a slow and safe speed." The cars were moving four to six miles per hour. That was a slow speed. It has been distinctly held that under this rule if the cars are moving at a slow and safe speed it is not negligence on a brakeman's part to go between the cars to couple or uncouple them. Hollenbeck v. Railroad, 141 Mo. 110. The evidence showed that it was customary for defendant's employees to uncouple cars in the exact manner in which deceased was doing it when injured. Under these circumstances it was not contributory negligence, as a matter of law, for deceased to walk between the cars and attempt to uncouple them. Curtis v. Railroad, 95 Wis. 469; O'Neill v. Railroad, 62 Neb. 358, cited and approved in: Emporia v. Kowalski, 66 Kan. 67; Trott v. Railroad, 115 Iowa 81; Railroad v. Sanders, 166 Ill. 270; Rifley v. Railroad, 72 Minn. 469; Hennessey v. Railroad, 99 Wis. 116; Hannah v. Railroad, 154 Mass. 529; Spaulding v. Railroad, 98 Iowa 212; Railroad v. Keller, 62 Pac. 905; Martin v. Railroad, 94 Cal. 326; Craver v. Christian, 36 Minn. 413; McCabe v. Railroad, 76 Pac. 701.

VALLIANT, J.—Plaintiff Susan A. Lee is the widow, and the other plaintiffs are the minor children, of Harvey A. Lee, deceased, who met his death in defendant's yards at Atchison, Kansas, where he was in the service of defendant as a switchman. At the time of the accident deceased was one of a crew engaged in switching cars. He was walking or running between cars in a moving train in the act of drawing the coupling pin; his foot was caught and fastened in an unblocked space between a guard rail and a track rail, he was thrown down and run over and killed.

The suit is founded on a statute of Kansas which is

set out in the petition, the terms of which will be here-inafter stated. The negligence charged in the petition is that the blocking between the main rail and the guard rail had been allowed to become rotten, defective, worn out and had disappeared; that defendant had neglected to block the interval and repair the defect, so that there was in fact no protection against entrapping the foot between the rails; the guardrail was defective and unsafe in that the ends thereof had not sufficient flare, the entrance to the same was short and narrow and cal-culated to seize and hold the foot of one walking over it; that defendant knew, or by the exercise of ordinary care would have known, the condition, yet failed to re-pair or remedy the defect, and deceased was ignorant of it.

The answer admits the relationship of the parties, the occurrence of the accident, but denies the allegations of negligence, pleads contributory negligence, also that the deceased was an experienced switchman, knew the condition of the tracks, yards, etc., and that under the laws of Kansas he had no right to recover, and none under the laws of Missouri. Reply, general denial.

The suit was originally instituted by Susan A. Lee as widow, and the minor children by John McKin-ney, their next friend, appointed by the court for that purpose, but after the institution of the suit the next friend died and thereupon the court on the petition of Susan A. Lee appointed her trustee for the children to prosecute the suit and an amended petition was filed in the name of Susan as widow and also as trustee for the children as plaintiffs. The record shows that the deceased was a resident of Kansas and no personal rep-resentative has been appointed to administer on his estate in that State.

At the opening of the trial defendant objected to any evidence on the part of the plaintiffs on the ground that the petition does not state facts sufficient to con-stitute a cause of action for the reason that it is not

alleged in the petition that the plaintiff's husband, if death had not ensued, would have been entitled to maintain an action against defendant under the laws of Kansas, and for the further reason that there is a defect of parties plaintiff. The objection was overruled and exception taken.

The evidence on the part of the plaintiff as to the accident tends to show as follows:

On April 26, 1899, about 6:45 in the evening, Harvey A. Lee was at work with a switching crew in defendant's yards at Atchison, Kansas; his duty was to draw the coupling pin, connecting cars in the train; the train was moving at a rate variously stated by the witnesses as from four to six or eight miles an hour, he was walking or running (according as the speed of the train may have been) between the cars, one hand on the head of the coupling pin to draw it as soon as it was loosened, the other holding the handhold of the car; the pin was held fast because of a curve in the track, and he walked or ran in that way for a distance variously estimated by the witnesses at from 50 to 150 feet, when one of his feet got caught in the space between the rails, the cars coming against him threw him down, broke his hold on the handhold, and he was run over and killed. The intervals between the guard rails and the track rails had at one time as early as 1893 or 1894 all been blocked, but the blocks had, to a great extent, been worn out or had rotted and disappeared, so that at this time about one-third of the spaces were blocked and two-thirds were not blocked. There were at that time fewer spaces blocked than there had been the year before. There were some blocks at the time of the accident in the immediate vicinity to the space in which this man's foot was caught, but none at that time in that space, but it had once been blocked. How long it had been unblocked was not shown, but one witness testified that he had observed it in that condition three weeks before the accident.

Plaintiff was permitted, over the objection of defendant, to prove that the guard rails in the yards of the Santa Fe and of the Burlington at Atchison were blocked.

Plaintiff introduced in evidence the following rule of the defendant company:

"Rule 23.—Great care must be used in coupling and uncoupling cars. Do not go between the cars unless they are moving at a slow and safe speed, or attempt to make any coupling unless the drawbar and other coupling appliances are known to be in good order."

On this point plaintiff's testimony tended to show that the rate of speed at which these cars were moving at the time was by railroad men considered slow, and that it was usual and customary for men to go between the cars moving in that way to uncouple them; that the foreman of the gang gave the signals to the engineer directing the moving of the train in switching.

There were fifty or sixty guardrails in this yard. The foreman of the switch crew and one of the switchmen were examined as to their knowledge of the condition of the yard in respect of the blocking and they showed that they had not very distinct ideas of it— they had not paid very close attention to it. On cross-examination by defendant the foreman of the crew was asked: "Q. Now, if a man observes at all, it is easy enough for him to see the condition of the guard rails in a yard like that at Atchison, isn't it? A. I have been there five years and I never observed them. Q. I say, if he observes at all? A. Yes, if he wants to look at it. Q. It is perfectly apparent, he can tell if he looks? A. Yes, he can if he looks at them, yes, sir. Q. If a man were undertaking to post himself, he could, within a few days after beginning to work, know whether the guard rails were blocked or not, couldn't he? A. Why, yes, if he would look at them and over-slight his work in doing it, he might. Q. Now, switch-

ing at the best is pretty dangerous work isn't it? A. Very dangerous.'' The deceased was an intelligent, experienced switchman. He had been working in this yard about nine months, but for the space of twenty-one days just prior to the accident he had been detained at home on account of a sick child, and had been at work only three or four days when the accident occurred.

The statute of Kansas under which the suit is brought is as follows:

''Sec. 418. When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action had he lived against the latter for an injury for the same act or omission. The action must be commenced within two years. The damages cannot exceed ten thousand dollars, and must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased.

''Sec. 419. In all cases where the residence of the party whose death has been or hereafter shall be caused as set for the in section 422 of the Civil Code of 1868 [the next preceding section], is or has been at the time of his death in any other State or territory, or when, being a resident of this State, no personal representative is or has been appointed, the action provided in said section may be brought by the widow, or where there is no widow, by the next of kin of such deceased.''

At the close of the plaintiff's evidence the defendant asked an instruction to the effect that plaintiffs were not entitled to recover, which instruction the court refused and defendant excepted.

Defendant offered no evidence. The cause was submitted to the jury under instructions which will be referred to later. There was a verdict for plaintiff for

$8,000 damages and judgment accordingly.     The defendant has appealed.

I.   The first assignment of error is the overruling of defendant's objection to any evidence in support of the petition because it does not allege that the deceased, if death had not ensued, could have maintaind an action under the laws of Kansas.

The petition does not state *in totidem verbis* that if deceased had survived the injury he could have maintained a suit in Kansas, but it does state facts which would, under the law of this State, have entitled him, if he had survived, to recover damages of defendant for the injury, and then it sets out the statute law of Kansas which gives the right of action for the benefit of the widow and children in the event of his death.   When one relies on the law of a foreign country or of a sister state for his right of action he is required to state in his pleading what the law of the foreign jurisdiction is. Such a law is to be pleaded and proven as a fact.   By the strict rules of pleading, therefore, the plaintiffs in their petition should have stated the law of Kansas applicable to the facts to show that the deceased, if he had lived, could, under that law, have maintained an action for damages, and if timely objection to the petition had been made by demurrer or otherwise, it would doubtless have been sustained with the result that the plaintiffs would have leave to amend.   But this court has often said that where an objection to the petition is made for the first time when the trial has begun, it will be overruled if the petition is susceptible of a construction that will constitute a cause of action.

Under the facts stated in the petition, the deceased, if death had not ensued, could, under the laws of this State, if the injury had occurred here, have maintained an action for damages against the defendant, and in the absence of any showing to the contrary we will presume that the law of Kansas is like the law of Missouri

on that point and will construe the petition liberally. [Sec. 629, R. S. 1899; Flato v. Mulhall, 72 Mo. 522; Burdict v. Railroad, 123 Mo. 221.]

The defendant by its answer accepted the issue of fact tendered in the petition in the form as tendered; that is, without express reference to the laws of Kansas the petition stated that the accident was caused by the negligence of defendant, and the answer expressly denied that fact. By so joining issue the defendant united with the plaintiff in inviting judgment on the facts as pleaded. And in addition to that the defendant in a further paragraph of its answer itself tendered the issue of the law of Kansas which the plaintiffs accepted by a general denial. If, therefore, as a matter of strict pleading, the petition was defective it was aided by the answer.

The court committed no error in overruling the objection to the introduction of any evidence in support of the petition.

II. The next assignment concerns the legal capacity of the plaintiffs to maintain a suit under the Kansas statute.

The injury complained of occurred in Kansas and the right of action declared on is given by the statute of that State; the plaintiffs must, therefore, stand on the Kansas statute, both for the law governing the merits of the case and their legal capacity to sue. This is not a new question in this State.

In Vawter v. Railroad, 84 Mo. 679, an employee of the railroad company was killed in Kansas through, as was alleged, the negligence of the servants of the company; his widow qualified as administratrix of his estate in the probate court of Schuyler county, Missouri, and as administratrix sued to recover the damages for which the company was made liable by the Kansas statute. At that time the statute of Kansas conferred the right of action on the personal representative alone of

the deceased. [Compiled Laws of Kan. 1885, p. 656.] It was held by this court that no one but the executor or administrator in Kansas could sue, that our statute expressly denied to an administrator in this State the right to maintain such a suit (secs. 96 and 97, R. S. 1879), and that a foreign statute could not confer on an administrator in Missouri a right which the statute of his own State expressly withheld.

Oates v. Railroad, 104 Mo. 514, was a case of like nature, except that the suit was brought by the widow; it was held that she could not sue because the Kansas statute limited the right to sue to the personal representatives of the deceased and did not extend it to the widow.

Since those cases arose, however, the Kansas statute in 1889 was amended, possibly with a view to meet those very decisions, or decisions elsewhere like them, and it now provides that if the person killed is a nonresident of Kansas or, being a resident, if no personal representative has been appointed, "the action provided in section 422 may be brought by the widow, or where there is no widow, by the next of kin of such deceased." In section 422 it is expressly provided that "The damages cannot exceed ten thousand dollars, and must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed," etc. Thus, if the deceased resided in Kansas his administrator there could sue, and if there was no administrator his widow could sue, but, whichever sued, the damages recovered were for the exclusive benefit of the widow and children if any. [Gen. Statutes of Kan. 1901, p. 1002-3.]

Our statute (sec. 548, R. S. 1899), declares that when such cause of action accrues under the laws of another State and the person entitled to the benefit of it is not authorized by the law of the foreign State to prosecute the action, the suit may be brought and pros-

ecuted in this State by a person to be appointed by the court here for that purpose.

In McGinnis v. Mo. Car & Foundry Co., 174 Mo. 225, the cause of action accrued in Illinois where there is a statute similar in character to the Kansas statute, in which, however, the right of action is conferred on the personal representative only of the deceased. Since the Illinois administrator could not maintain the action here, the widow, who was entitled to the benefit of the action, caused McGinnis to be appointed in the circuit court in St. Louis for the purpose of bringing the suit and the suit was brought in his name for her benefit. But this court held that it was beyond the power of our Legislature to confer the power to sue on a cause of action created by the Illinois statute on a person on whom the Illinois statute had not conferred it. The court, per MARSHALL, J., said (l. c. 232): "In such a case the statute creating the liability must confer upon a specified person the right to enforce the liability. Unless it does so, no one can enforce it, because no one has a right under the general common law to do so. When, therefore, a statute creates a liability and prescribes the person who shall have the right to enforce it, the two parts of the statute are component parts of the whole, and both are necessary to constitute the whole, and it must be done exactly in the manner and by the persons or agencies that the statute prescribes. . . . In short, the whole matter depends upon the Illinois statute. That statute confers a right of action upon the administrator, and not upon the widow or next of kin. It is for their benefit, but they cannot maintain an action therefor. Our statute attempts to enforce the liability created by the Illinois statute, not through the person who alone is given the right under the Illinois law to enforce it, but through a person who would have no right to enforce the liability in that State." So our statute (sec. 548) was condemned as invalid.

Jones v. Railroad, 178 Mo. 528, arose under the Kansas statute. The suit was brought by the widow in her own right and as next friend for her infant child. It was objected to the petition in that case that there was a misjoinder of parties plaintiffs, to-wit, that the infant was an unnecessary party, but the court held that, inasmuch as the Kansas statute gave the widow the right to sue for the sole benefit of herself and her infant child, she was the trustee of an express trust and whilst it was unnecessary for her to have joined the infant it was immaterial that she did so. The court, referring to section 541, Revised Statutes 1899, said: "But whilst the trustee of an express trust may sue in his own name without joining the person for whose benefit the suit is prosecuted, he is not forbidden to join the beneficiary, and if he does so, the most that can be said in criticism of that act is that it was unnecessary."

The reference to our statute in that connection was not for the purpose of basing upon it the right of the widow in that case to sue, because we there based her right to sue, as we must base the widow's right in this case, on the statute of Kansas, but it was to show that there was in our law nothing repugnant to her right to sue as agent of an express trust. The Kansas statute makes the widow, under the circumstances of this case, a trustee of an express trust and expressly authorizes her as such to sue for the benefit of herself and her minor children.

Reference in the Jones case was made also to section 547, Revised Statutes 1899, which is: "Whenever a cause of action has accrued under or by virtue of the laws of any other State or Territory, such cause of action may be brought in any of the courts of this State, by the person or persons entitled to the proceeds of such cause of action: Provided, such person or persons shall be authorized to bring such action by the

laws of the State or Territory where the cause of action accrued."

From the decisions in the foregoing cases the following conclusions are drawn:

a. The right of action given by the foreign statute cannot be maintained in this State in a suit by a person on whom the foreign statute has not conferred the right to sue.

b. It cannot be maintained by a foreign administrator.

c. It can be maintained by one who has capacity otherwise to sue here and on whom the foreign statute has conferred the right.

The Kansas statute confers the right on the widow to sue when no administrator has been appointed, which is the fact in this case, and our statute says that if the foreign statute confers the right on her to sue there, she may sue in the courts of this State.

She has brought this suit in her capacity of widow for the benefit of herself and her infant children, and although she has taken the unnecessary precaution to have herself appointed trustee for her children and adds that to her other capacity, that fact neither adds to nor mars her right of action. We hold that she was entitled to sue as she has done.

Since the decision in the McGinnis case above referred to our General Assembly, doubtless acting on the suggestion therein made, has repealed section 548 as it then was and has enacted a new section in place of it wherein authority to sue in such case in courts of this State is conferred on foreign administrators, guardians, etc. [Laws 1905, p. 95.] That, however, does not affect this case which was pending in this court when that act was passed.

III. Defendant insists that under the law of Kansas the deceased, if he had lived, could not have maintained an action against the defendant, and therefore the plaintiffs cannot maintain this action.

The argument is that under the decisions of the Supreme Court of Kansas the deceased was guilty of such contributory negligence, in working in the yards in the unblocked condition, that the court should have so declared as a matter of law and have nonsuited the plaintiffs. The decision on which this argument is chiefly based is in Rush v. Railroad, 36 Kan. 129, decided in 1887. That was a case in which the plaintiff's intestate, a switchman, had come to his death by getting his foot caught in an unblocked track while attempting to pull a coupling pin and before he could extricate his foot the cars passed over him and killed him. That case was like in its facts to this except that the yard had never been blocked. The court said: "The railway was not out of repair; it was in just the same condition it was when it was originally constructed, and it was constructed in the yard where plaintiff's intestate worked precisely as it was constructed in all the other yards belonging to the defendant, and in precisely the same manner as many other railways belonging to other companies are constructed." Again the court said: "It was not different from other guardrails in that yard, nor different from any of the other guardrails of the defendant's five thousand miles of railway; nor different from the guardrails of many of the other railways in this country." The court held that the defect, if defect it was, was obvious and the danger was as apparent to the deceased as it was to the defendant.

Other Kansas cases which may be seen by reference to appellant's brief are cited, which, in the main, hold that if the danger is as obvious to the servant as it is to the master, the court is justified in holding as a matter of law that the servant who continues in the service cannot recover if he is injured. In some of those cases the court designates it as assumption of risk and in others as contributory negligence. But in Emporia v. Kowalski, 66 Kan. 64, that court lays down the law in regard to assumption of risk in effect

the same as it has often been declared by this court; at page 71, per GREENE, J., it is said: "It is contended that the defendant assumed the risk of injury from the falling of the pole, and, therefore, cannot recover. While it is true the employee assumes the ordinary risks incident to his employment, the risks thus assumed by him, however, are those only which occur after the due performance by the master of those duties which the law imposes upon him." In that case the court refers with approval to O'Neill v. Railroad, 62 Neb. 358, which was a case in its facts very much like the case at bar, wherein the Nebraska court, at p. 360-1, said: "The defendant invokes the rule that a servant, by his contract of service, assumes the risks and dangers incident to his employment, and insists that such rule relieves it of liability for the injury sustained by the plaintiff. That the servant, by his contract of service, assumes certain risks is true. Just what such risks are we are not required to determine in this case, because it is sufficient to say that the negligence of his employer is not one of the risks assumed. On the contrary, a servant has a right to assume that his employer has used ordinary care and prudence to insure his safety in the course of his employment."

We have gone through the Kansas cases cited by appellant and also those cited by respondent, to discover what difference, if any, there is in the law of that State and our law in reference to the liability of the master to the servant in such case, and we discover no material difference. The Kansas court has not, in the cases that we have seen, emphasized the distinction between contributory negligence and assumption of risk as we have done, but in the main it has declared the law as we have declared it. We must yield to the decisions of the highest court of a sister State as to the law of that State, but we would be at liberty to differ from its judgment in the application of the law to the facts of a given case if we felt so constrained. The

Rush case was decided in 1887 when, according to the recitals in the opinion, the system of blocking the guardrails in a switch yard had not been adopted by this defendant, in any of its yards along its then five thousand miles of tracks, and many other railroad companies had not adopted it. A switchman in the service of the defendant at that time had no right (the court thought) to expect the tracks to be safeguarded in this manner, and in that view of the facts the court held that there was no cause of action. Since then eighteen years have passed and railroad companies have gained by experience in many things. This company, as the evidence in the case at bar shows, had at the time of this accident adopted the blocking system. It had two yards in Atchison, one of which was fully blocked, and this one had been blocked, but in that respect it had been suffered to fall into decay and become out of repair. Many of the blocks were worn out and rotten and had disappeared. The switchman, of course, could have seen this condition, and if one saw it and appreciated the danger and continued to work over it and was injured, the question of contributory negligence would arise, a question to be decided as a matter of law by the court or as one of fact by the jury; if there could be no two opinions about it, it was a question for the court; if men might reasonably differ about it then it was for the jury. This man had been working in that yard several months, but there was evidence tending to show that for the period of twenty-one days just prior to the accident he had been detained at home with a sick child and had been at work only three or four days. The foreman of the crew and another switchman of the crew were unable to remember whether the rails in the immediate vicinity of the accident were blocked or not; they gave the impression that in the hurry of their work they had no time to look for the blocks. The foreman testified that one could post himself as to the blocks if he would take the time to do so, if he would look for them and slight his work.

We think whether or not the deceased knew the danger he was incurring from the absence of the blocks was, under the evidence, a fair question for the jury.

It is argued that he was guilty of negligence in running between the moving cars. Going between the moving cars for that purpose was the usual practice and was recognized as proper by the defendant. Rule 23 in evidence was couched in the form of a caution, but at the same time it indicated to the servant what his master expected of him. He was warned not to go between moving cars to uncouple them unless they were moving at a slow and safe speed. The evidence was that these cars were moving at what men in that line of business called slow speed. Just how fast the train was going was not definitely ascertained. It was put at four, six or eight miles an hour. Whether he was running or walking depends on the speed of the car. If it was four miles he was walking, if it was eight miles he was running. And so, too, as to the distance he went. It was variously estimated at from 50 to 150 or 200 feet. The speed of the cars and the distance covered were facts to be found by the jury. The evidence on these points was not what might be called conflicting, but different, according to the estimates of the different witnesses, and the jury were to judge from the various positions from which the different witnesses saw the accident, their capacity for making the estimates, etc., which was most reliable.

Railroad v. Cozby, 69 Ill. App. 256, was a case quite like the case at bar in its facts, and the rule of the company in evidence was like this rule 23 except that in one sentence it forbade the switchman to attempt to uncouple moving cars and in another authorized him to do so if they were not moving at a dangerous rate of speed. The court said:

"The evidence shows that it was the custom to couple and uncouple moving cars in the Cairo yards. This practice was certainly known to the railroad authori-

ties, and was not discouraged by them, except in this contradictory manner on paper. It is manifest that in extensive yards, where much switching is to be done, the business of a railroad company could not be transacted, if every train was brought to a dead halt in order that cars might be coupled or uncoupled. We can not hold that Craiglow was necessarily guilty of negligence because he undertook to uncouple cars which were moving at the rate of two or three miles an hour.''

Under the evidence in this case the court would not have been justified in taking the case from the jury on the ground that the deceased was guilty of negligence.

The evidence was also sufficient to justify the submission to the jury of the question of negligence on the part of the defendant in failing to furnish its servants a reasonably safe field in which to work. [Huhn v. Railroad, 92 Mo. 440.]

IV. Over the objection of defendant, evidence was admitted to show that other railroads had their yards at Atchison blocked. Evidence of a general custom in well-equipped railroad yards would have been competent, but evidence as to the condition of the yards of one or two other companies was incompetent. But we do not think that evidence could have prejudiced the defendant. If it tended to prove anything it was that blocking the rails was an approved method of safeguarding the tracks. The evidence was undisputed that the defendant itself had adopted that method in its yards at Atchison and in the absence of any evidence or suggestion to the contrary it seems to be such a self-evident fact that proof on the point was unnecessary.

V. At the request of the plaintiffs the court gave the following instruction:

''1. If you believe and find from the evidence that on April 26, 1899, Harvey A. Lee was in the employ of defendant in its yard at Atchison, Kansas, as switchman, and that the duties of said Lee required him to

assist in the switching of cars therein, then it was defendant's duty to exercise ordinary care to provide him a reasonably safe place in which to work, and reasonably safe tracks and guard rails upon which to work. If, therefore, you believe and find from the evidence that on said day said Lee was, in pursuance to orders of defendant, engaged in uncoupling two moving freight cars on number four track of defendant in Atchison, Kansas; that the right foot of said Lee, while he was performing said duty, slipped into the interval between the main rail and guardrail of said track; that thereby his foot was entrapped and he was unable to escape and the cars ran over him and killed him; that his death was caused by the blocking in said interval between said main rail and guardrail having disappeared therefrom, so that there was no protection against the entrapping of a foot in the space between the guardrail and the main rail; that at said time defendant knew, or by the exercise of ordinary care might have known that said blocking had disappeared and that there was, therefore, no protection against the entrapping of a foot therein, and negligently and wrongfully failed and omitted to repair the same, and that because thereof said rails and tracks were not reasonably safe for said Harvey A. Lee to work upon, then you will find a verdict in favor of plaintiffs unless you further find and believe from the evidence that said Lee assumed the risk of said injury, or was guilty of negligence on his part contributing to produce his death as defined in other instructions given you.''

The criticism of this instruction is that it refers the jury to other instructions defining assumption of risk and contributory negligence and that there are no such other instructions.

There was an instruction defining ordinary care and negligence, and the following instructions given at the request of defendant:

''1.  The court instructs the jury that if they be-

lieve from the evidence in the case that the deceased Harvey A. Lee was at the time of the accident running between two cars in motion and that he had been between said cars while they were in motion for a distance of three or four car-lengths before the accident occurred, then the plaintiffs are not entitled to recover and the verdict must be for defendant.

"2. The court instructs the jury that if they believe from the evidence in the case that Harvey A. Lee was at and before the time of his death an experienced railroad switchman, of average intelligence and in full possession of his mental and physical faculties, and that he had been in the employ of the defendant as a switchman for several months next before the date of the accident which resulted in his death, and that during that time he had worked in what is known as defendant's lower yard at Atchison, Kansas, and at the point where said accident occurred, and that prior to the date of the said accident he had ample means and opportunity of knowing the condition of the track where said accident occurred *and at the time said accident occurred,* then the plaintiffs in this case are not entitled to recover and the verdict must be for the defendant."

The words in italics in No. 2 were inserted by the court and to that extent were a modification of the original No. 2 as asked by defendant. ·

There was no instruction expressly defining the terms "assumption of risk" and "contributory negligence," but instructions one and two for defendant embraced all the facts that defendant relied on to establish its defense on either of those grounds, and directed a verdict for the defendant if those facts were found. The defendant in drafting those instructions did not say, if you find those facts then the deceased was guilty of contributory negligence or he assumed the risk and therefore you will find for the defendant, but only said, if you find those facts you will find for the defendant. The instructions fully covered the defendant's theory,

giving it the benefit of the facts on which it relied, omitting only to say what those facts, if found, would be called in legal parlance. Instruction numbered 1 for defendant was stronger in defendant's favor than the circumstances of the case justified, but that is now immaterial. The instructions taken as a whole presented the case at least as favorably to the jury as defendant could ask.

VI. Instruction 3 for plaintiff on the measure of damages was as follows:

"If you find a verdict in favor of the plaintiffs, you will assess the damages at such sum as you find from the evidence will reasonably compensate Susan A. Lee, the widow, and Edward R. Lee, Anne E. Lee, Helen B. Lee and Rosa M. Lee, the children, for the injury, if any, necessarily resulting to them from the loss of the life of Harvey A. Lee, assessing such damages, with reference to the pecuniary loss, if any, sustained by said widow and children of deceased: first, by fixing the same at such sum as would be equal to the probable earnings of the deceased, taking into consideration his age, business capacity, experience, and the habits, health, energy and perseverance of the deceased during what would probably have been his lifetime if he had not been killed; second, by adding to this the value of his services in the superintendence, attention to the care of his family and education of his children, of which they have been deprived by his death, but your verdict must not be over ten thousand dollars."

That instruction is quite like that in Jones v. Railroad, 178 Mo. 528, which we condemned. But, as in that case, the jury in this case did not put the construction on the instruction that it was liable to have put upon it. Under the figures given in evidence, his wages $75 to $85 a month, his age 29 years and expectancy of life 36 years, his prospective earnings would have been about $35,000, and the limit placed on the amount that might be recovered by the Kansas statute is $10,000.

The jury fixed the award at $8,000, showing that they did not understand the instruction to mean that they were to give the full amount of the possible earnings up to the limit fixed by the Kansas statute. Here was a widow and four young children, the oldest nine years old, to be compensated for their loss by the death of their husband and father; the jury, though misdirected as to the measure of damages, said by their verdict that in their judgment $8,000 was a reasonable amount. We have no reason to think that that was not a fair and conservative estimate, and we have no right to set it aside for a mere technical error which it is evident did not mislead the jury.

VII. The court refused instructions 3, 4, and 5 asked by defendants. Three and four were to the effect that if the jury should find that the deceased was an experienced switchman and had worked in this yard for several months, during which time a considerable portion of the guardrails there were unblocked and he had the means and opportunity of knowing that fact, then the plaintiffs could not recover. That means that if a servant is aware of a defect in the appliance or field furnished by the master, or if he even has an opportunity of discovering it, he works at his own risk and cannot recover; it leaves out of view the question of whether or not the defect was such that the servant might reasonably hope to use it by exercising ordinary care. There was no error in refusing those instructions.

Instruction 5 was in effect that if the man was between the cars while they were going a distance of 150 or 200 feet, the verdict should be for the defendant. Since the evidence showed that it was the usual custom of switchmen to go between moving cars to pull the coupling pin, and the printed rule of the company authorized them to do so when the train was moving at a slow rate, and that this train was moving at a rate railroad men called slow, the court had no right to say

as a matter of law that it was negligence *per se* to remain between the moving cars for any specified distance, either fifty or a hundred and fifty feet. The court had already gone too far in that direction by directing the jury to find for the defendant if the man remained between the cars while they were moving three or four carlengths. There was no error in refusing those instructions.

We find no reversible error in the record. The judgment is affirmed.

*Brace, C. J., Gantt* and *Lamm, JJ.*, concur; *Marshall, J.*, dissents; *Burgess* and *Fox, JJ.*, dissent on the ground that, in their opinion, the deceased was guilty of contributory negligence.