THE CITY OF EMPORIA v. ANTON KOWALSKI.

No. 12,794. (71 Pac. 232.)

SYLLABUS BY THE COURT.

1. MASTER AND SERVANT—*Duty of Master.* It is the duty of the master to provide for his employees a safe place to work, including structures and surroundings, and safe and reasonably suitable machinery, tools, implements and appliances with which to work, and the employee may enter upon the discharge of his labor assuming that these duties have been performed.

2. ——— *Electric-light Poles—Evidence of Defects.* Where injury results from the falling of an electric-light pole belonging to the city, occasioned by rottenness beneath the surface of the ground, evidence of the condition of other poles which have been in the ground the same length of time, but taken up six months after the accident and exposed to the atmosphere six months before the examination, is competent as tending to show the general condition of the poles in use by the city at the time of the accident.

3. ——— *Assumption of Risks.* The ordinary risks incident to the business assumed by an employee are those only which occur after the due performance by the master of those duties which the law imposes on him.

Error from Lyon district court; W. A. RANDOLPH, judge. Opinion filed January 10, 1903. Affirmed.

*J. Harvey Frith,* and *Kellogg & Madden,* for plaintiff in error.

*Buck & Spencer,* and *Lambert & Huggins,* for defendant in error.

The opinion of the court was delivered by

GREENE, J. : Anton Kowalski recovered judgment against the city of Emporia for injuries sustained, while an employee of the city; by the falling of an electric-light pole, from which judgment the city prosecutes this proceeding.

The city owned an electric-light plant and Kowalski was one of its employees.   His duties appear to have been to climb certain of its electric-light poles, to which were attached cross-arms and lamps, clean the lamps and put in new carbon, and to report any defects in the wire, poles, or lamps.   He usually completed his work in the forenoon of each day.   The remainder of the day he spent about the engine-room carrying away ashes, cleaning the engine, and performing such other duties as were required of him. While at the top of the pole in question, replacing the carbon, the pole, which had become rotten in the ground, fell with him, crushing his leg.

The negligence charged against the city is that it allowed its electric-light poles to remain in the ground until they became decayed and rotten at the base, below the surface of the ground, and thus become dangerous to the lives of its employees whose duty it was to climb such poles for the purpose of cleaning the lamps and replacing the burned-out carbons.   It is contended by the city that it was a part of the duty of the plaintiff to inspect the electric-light poles and report their condition to the superintendent; that

5—66 KAN.

plaintiff neglected to perform such duty with respect to this pole; that the city was not aware of such defect, and, therefore, his injury was the result of his own negligence. Plaintiff denied that his duty, with respect to these poles, was other than to report any defect in the poles, wires or lamps observable by him in in the performance of his duties, and that the defect in this particular pole was not observable or known to him at the time of the injury.

Certain interrogatives were submitted to the jury, among which were the following:

"Was plaintiff required to make other than a superficial examination of any of the poles? No.

"Did the city, by its manager or any other official, ever make any careful examination or inspection of that pole? No.

"Was the plaintiff negligent, under all the circumstances, in making no other or further inspection than the evidence shows he did make? No.

"Was not the defendant negligent in not examining or inspecting that pole? Yes."

These questions having been submitted to the jury and the findings made upon contradictory evidence, they are conclusive upon the plaintiff in error on the questions of fact involved in its contention. The court instructed the jury as follows:

"That plaintiff, as an employee of said defendant, in the exercise of his duties as such employee, had a right to assume that defendant had performed its duty in providing suitable tools and appliances, including poles, and plaintiff was not bound to exercise care in ascertaining, or even inquiring, whether defendant had so performed its duty."

It is complained that this absolved the plaintiff from the exercise of care in ascertaining whether the pole in question was a dangerous one to climb at the time of the accident. The defect in the pole which caused it to fall

Emporia v. Kowalski.

was in that part which was buried in the ground, and the evidence shows that an inspection of that part of the pole is made with a long spade, called a sharp-shooter, and an iron bar.   Such defect was not observable by a casual examination.

It is the duty of a master to furnish a safe place for his servants to work, and reasonably safe tools and appliances to work with, and the employee, without instituting an investigation to ascertain the condition of the premises, may assume that the master has performed this duty.   (*O'Neill v. Chicago, R. I. & P. R. Co.*, 62 Neb. 358, 86 N. W. 1098.)   In *Porter v. Han. and St. Jo. R. R. Co.*, 60 Mo. 160, 162, it was said :

"It is not the business of the servant, nor has he the means of ascertaining whether the machinery or structure upon which he is employed to operate is defective.   It is the duty of the employer to furnish these appliances ; and if he failed to do so, he is responsible for injuries resulting from defective machinery."

In *C. & E. I. R. R. Co. v. Kneirim*, 152 Ill. 458, 462, 39 N. E. 324, 43 Am. St. R. 259, speaking of the duties assumed by a railway brakeman, it was said :

"Whilst Kneirim assumed the ordinary dangers and risks of his employment, he did not assume a risk of the negligence of the employer in failing to have the cars and appliances in a reasonably safe condition. He had a right to believe the cars were, as to their repair, in a reasonably safe state, and that the master's duty in that regard had been discharged."

If, however, the place is dangerous, or the tools and appliances furnished are unfit for the use for which they are intended, and these facts are within the knowledge of the employee, or are so plainly observable that in the exercise of reasonable care he should have discovered the danger therefrom, and he continues in the service without objection or without

promise of repair, he is properly held to have assumed the risk. The instruction given is not open to the objections urged against it, and we think it properly states the law applicable to the facts in this case.

Complaint is made of an instruction which, in effect, told the jury that if the plaintiff knew of the defective condition of the electric-light pole and continued to use it, it was the duty of the jury to determine whether, under all the circumstances, he was guilty of negligence. It is argued that the court should have instructed the jury that if the plaintiff knew of the defective condition of the pole and thereafter continued to use it he assumed the risk and could not recover. This is unimportant, since the jury, in answer to the last interrogatory submitted by the defendant, found that the plaintiff was not acquainted with the condition of the poles or the danger of climbing them.

The same reasoning applies to the objection made to the instruction asked by the defendant and given in a modified form. This instruction proceeded upon the hypothesis that the plaintiff knew, or ought to have known, of the rotten condition of the pole. The jury found that he did not possess such knowledge, and that he was only required to make a superficial examination of the poles; and the evidence shows that such an examination would not have disclosed the rotten condition of the pole. Since the jury found that plaintiff was not negligent in failing to make further inspection and examination than he did make, no harm resulted to the defendant by giving the instruction in its modified form.

Serious objections are urged to the admission of certain testimony given by one O'Connor. It appears that about six months after the accident the city took up a number of its lines and a few of its light poles,

some of which were removed and used in other places
and some piled at Fremont Park.   The latter were
exposed to the atmosphere from April to the time of
the trial in the following November.   At the trial the
plaintiff introduced the witness O'Connor, who testi-
fied to the condition of the poles at Fremont Park at
the time of the trial.   This testimony was objected to
by the defendant, for the reason that these particular
poles had remained in the ground more than six
months after the accident, and thereafter had been
exposed to the atmosphere more than six months prior
to the trial, and that their condition at the time of the
trial was no evidence of the condition of the poles
generally in use at the time of the accident.   It was
in evidence that the average life of such poles was
from fifteen to sixteen years.   The decay, therefore,
which took place during the six months they remained
in the ground after the accident was slight, and, as
no material change in their condition would take place
during the six months they were exposed to the atmos-
phere, we think the condition of these poles when the
witness examined them was some evidence of the con-
dition of the poles generally used by the city at the
time plaintiff was injured.

In cases of like character, where the condition of the
premises, structure or appliances at the time and place
of the injury are in question, evidence of the condi-
tion existing a short time before or after the accident
has been held to be admissible, also evidence tending
to show the condition of other portions of the premises
or structure than that which immediately caused the
injury, if therefrom the condition of that portion di-
rectly involved at the time of the injury can be reason-
ably inferred.   In *Ohio Valley Railway Company v.
Watson's Adm'r*, 93 Ky. 654, 658, 21 S. W. 244, 245,
19 L. R. A. 310, 40 Am. St. Rep. 211, an action by

a brakeman for injuries sustained, caused by a rotten tie, the court said :

"But where the injury results from rotten ties, and the contention is that they are sound, we are not prepared to say, the testimony being conflicting, that proof as to its defective condition on account of rotten ties near to, as well as at, the place of the accident would be incompetent. It is true that a rotten tie 100 feet distant from where the train was derailed could not have caused the accident; but when one side, the plaintiff, shows that the ties were rotten at the place, and the defendant that they were sound, the defective or sound condition of the ties within 100 feet on each side of the place of the accident, or for a further distance, would to some extent corroborate the statements of the one side or the other."

In *C. P. & St. L. Ry. Co. v. Lewis*, 145 Ill. 67, 78, 33 N. E. 960, 963, a case in which the accident occurred by the derailment of a train because of rotten ties, a witness testified that he had examined the new ties, which had replaced the old and decayed ones, and had also examined the pieces of the rotten ones taken out shortly after the accident. To the objection against this testimony, the court said :

"We are of the opinion that his examination of the ties, being recently after the accident and at the place of derailment, was competent testimony, when it was offered, to go to the jury, to be considered for what it was worth by them, as tending to establish the condition of the ties at the time of the injury to appellee."

In *Swadley v. The Mo. Pac. Ry. Co.*, 118 Mo. 268, 279, 24 S. W. 140, 142, for the purpose of showing the condition of the ties used by the company at the time of the accident, evidence was introduced of their condition before and after such accident. The court said :

"But it was not necessary that the witness should

Emporia v. Kowalski.

be able to speak of the condition of the ties on that very day.  Evidence of the condition of the ties within a reasonable time before or after the accident was competent.  The limitation to such evidence is that it must be such, in character and point of· time, as to justify the inference that the ties were in a bad condition at the time of the accident.''

It is contended that the defendant assumed the risk of injury from the falling of the pole, and, therefore, cannot recover.  While it is true that the employee assumes the ordinary risks incident to his employment, the risks thus assumed by him, however, are those only which occur after the due performance by the master of those duties which the law imposes upon him.  (*Pantzar v. Tilly Foster Iron Mining Co.,* 99 N. Y. 368, 2 N. E. 24; *Stringham v. Stewart,* 100 id. 516, 3 N. E. 575; *Benzing v. Steinway & Sons,* 101 id. 547, 5 N. E. 449.)

The plaintiff was not engaged to superintend the selection, inspection, or replacing of electric-light poles; he had no supervision or control over such work and no duty to perform with reference thereto.  He was instructed to report any defects in the lamps, poles or wires observed while in the performance of his duties; but, as has been said, the defect in the pole was not patent nor observable, and was not known and could not have been observed by him in the exercise of ordinary care in the performance of his duties.  It was the duty of another to examine these poles and make sure that they were safe.  The plaintiff did not assume the risk of the negligence of his employer in the performance of its duty toward him in a department of work with which he was not connected.

The judgment of the court below is affirmed.

All the Justices concurring.