THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY V. LEE GREEN.

No. 14,954   (89 Pac. 1042.)

SYLLABUS BY THE COURT.

1. PERSONAL INJURIES—*Allegations and Proof of Negligence of a Master—Variance—Failure of Proof.* A petition in a personal-injury case charged negligence in the selection of an insufficient wooden block and a negligent adjustment of such block to render effective the work of a hydraulic ram in lifting a railway engine which was being repaired by a group of four or five skilled mechanics under the direction of a foreman. It was alleged that the foreman selected the block and handed it to the man who adjusted it. There was some evidence on the trial that another than the foreman selected the block and handed it to the man who adjusted it. From all the evidence the jury found that the man who adjusted the block selected it. *Held,* there was no material variance between the pleading and the proof, and no failure of proof because the foreman did not select the block.

2. VARIANCE—*When and How the Question Must be Raised.* The question of a variance between a pleading and the proof offered to sustain it must be raised at a time and in a manner which will permit an amendment of the pleading upon such terms as may be just; and the adverse party must not only be misled to his prejudice, but that fact must be proved to the satisfaction of the trial court, and it must be shown in what respect he has been misled.

3. RAILROADS—*Injury to Employee—Negligence of Fellow-servant—Statutory Liability of the Master.* The plaintiff, a skilled employee of the defendant railway company, was engaged in the repair of an engine in active use in the operation of the road, under the circumstances related in paragraph 1 of this syllabus, and was familiar with all the details of such work. The defendant provided a safe place to work, com-

petent and habitually careful workmen, safe machinery and appliances to work with and sound and sufficient wooden blocks to choose from. The plaintiff had nothing to do with the selection or adjustment of the block used in connection with the hydraulic ram, and no opportunity to observe how the engine was supported after it had been raised. While he was engaged in the performance of duties of his own, according to orders from the foreman, the engine fell and he was injured because another employee had negligently selected an insufficient block and had negligently failed to adjust it properly. *Held:* (*a*) The defendant is liable under the railway employer's liability act notwithstanding it had discharged its common-law duties and had no notice of the use of the defective block; (*b*) the plaintiff did not assume the risk of injury from the negligence of his coemployee; (*c*) the plaintiff was not guilty of contributory negligence.

Error from Labette district court; THOMAS J. FLANNELLY, judge. Opinion filed April 6, 1907. Affirmed.

*John Madden,* and *W. W. Brown,* for plaintiff in error.

*Nelson Case,* and *Arthur Cranston,* for defendant in error.

The opinion of the court was delivered by

BURCH, J.: The plaintiff, an employee of the defendant, a railroad company doing business in this state, recovered a judgment against the defendant for damages resulting from the loss of his right hand through the negligence of a coemployee. The defendant prosecutes error.

The plaintiff, a skilled mechanic, and other workmen equally experienced and capable, among whom were C. L. Hopwood and a man named Metzger, were completing the repairs on an engine, under the direction of a foreman named Hughes. In order to finish the work it was necessary to elevate the rear portion of the engine. It was customary in such cases to lift by means of jacks, but in this instance a hydraulic ram was employed. To prevent the end of the engine from sagging after it had been raised it was necessary

to support it by iron blocks placed between the box and the frame. The foreman sent the plaintiff some distance away after the needed blocks, and while he was absent the engine was raised. Upon the plaintiff's return he was ordered to proceed to put in the blocks, and while he was doing so the engine fell and crushed his hand. The piston of the hydraulic ram was made of metal, and the engine deck was constructed of like material. To form a cushion and prevent slipping when pressure was applied the foreman ordered a wooden block placed between the piston-head and the deck-casting. The defendant furnished solid hard-wood blocks, but one was selected from the available supply which was formed of two flat pieces of oak nailed together. Hopwood placed it on top of the piston, but instead of adjusting it so that the two pieces composing it would lie flat and safely support the weight of the engine he placed it so that the pieces stood on edge. In the center of the deck was an oblong casting called the "boss." Hopwood placed the wooden block on the edge of the boss and not at the center. As a result it did not receive the pressure perpendicularly, and, the weight of the engine being unevenly distributed, the block split and crushed.

The plaintiff's specifications of negligence appear in the following extracts from the petition:

"That said Hughes selected a wooden block and gave it to Hopwood, ordering him to place it between the top of said ram and the deck-casting of said engine for the purpose of forming a cushion to prevent slipping of said deck-casting on said piston; that said Hopwood placed the said block as directed aforesaid. . . . That the negligence of which plaintiff complains herein is the want of ordinary care of the defendant, through its agents and employees, Hopwood and fore-man Hughes, in the following manner: Said Hughes was negligent in that he selected the above-described block, with its defects as aforesaid, and ordered it used by Hopwood, and also in that the said Hughes directed said engine to be supported for the great length of seven minutes upon said defective block; that said Hop-

wood and Hughes were negligent in that they did not squarely place, and keep in place, the said wooden block between said deck-casting and top of piston during the time they were raising and lowering said engine, and in not observing and inspecting the effect of said great weight upon said block as the work of raising and lowering said engine was progressing."

The defendant denied negligence, and affirmatively pleaded contributory negligence and assumption of risk.

There was evidence on behalf of the plaintiff that it was no part of his duty to inspect the work of his fellows; that the foreman was there for that purpose, and that it was the foreman's duty to see that the workmen properly performed their respective tasks. The foreman did not in fact know the kind of block which was used. He testified that Metzger procured it and handed it to Hopwood. He said he gave an emphatic order for a hard-wood block, and that Metzger stated he had one of solid oak.

The jury returned with its general verdict special findings of fact, the most important of which, classified as well as may be according to the subjects to which they relate, are as follow:

I.

"(18) Ques. Does not the evidence show that in raising engine No. 89 a wooden block was used as part of the appliance for raising said engine? Ans. Yes.

"(19) Q. Does the evidence show that said block was made up of two pieces of oak timber, each two inches by four inches? A. Yes.

"(20) Q. Does the evidence show that these two pieces were nailed together by nails long enough to go through and clinch? A. Yes."

"(22) Q. Does the evidence show that to careful observation said block was sound and strong? A. Sound but not strong enough."

"(24) Q. Does the evidence show that in the selection of said block ordinary judgment and prudence was used? A. No.

"(25) Q. Could a machinist of ordinary care and prudence have determined that said block was insufficient and defective? A. Yes.

"(26) Q. If you answer the above question in the affirmative, then state in what manner a machinist of ordinary skill could have determined that said block was insufficient and defective. A. By examination."

"(29) Q. Does the evidence show that in placing said block it was done with ordinary skill and care? A. No.

"(30) Q. If you answer the above question in the negative, then state in what manner and in what particulars said block was unskilfully and carelessly placed. A. By placing block on edge, and that on edge of 'boss'."

"(38) Q. Does not the evidence show that a person of ordinary care and prudence would have selected such a block for the purpose for which it was used? A. No.

"(39) Q. If you answer the above question in the negative, then state why a person of ordinary care and prudence would not have selected such a block for the purpose for which it was used. A. Block insufficient."

"(37) Q. If you find the defendant is negligent, state what person of said gang was negligent, and in what manner and by what action he was negligent. A. Hopwood, for selecting such block and placing it in place and manner he did, and Hughes for allowing same."

"(45) Q. If you find for the plaintiff, then state upon what acts of negligence upon the part of the defendant you base your verdict. A. By not securing a proper block and by not adjusting properly."

"(51) Q. Does not the evidence show that no person of said gang was negligent or careless? A. No."

## II.

"(6) Q. Was the plaintiff an experienced machinist? A. Yes.

"(7) Q. Has the plaintiff been engaged in the occupation of a machinist almost continuously since the year 1889? A. Yes."

"(17) Q. Does not the evidence show that the plaintiff had good eyesight at the time of the accident? A. Yes."

"(27) Q. Who placed said block in its position under said engine? A. Hopwood."

"(31) Q. After said block was placed under the engine does not the evidence show that the plaintiff

had the same opportunity to examine it as any other person? A. No."

"(34) Q. Does not the evidence show that plaintiff could by stooping down have examined said block while it was in its position under said engine? A. Not from his position.

"(35) Q. Does the evidence show that the plaintiff examined said block? A. No."

"(47) Q. Does not the evidence show that plaintiff had knowledge in common with the other men of the weight of the engine, the power, fitness and use of the hydraulic lift, and in general of all the surrounding appliances and conditions at the time of the accident? A. Yes, with the exception of condition and placing of block."

### III.

"(23) Q. Were not each of said gang competent and skilful in the lines of his respective work? A. Yes."

"(28) Q. Does the evidence show that the person who placed said block in its position under said engine was of ordinary skill and was competent in his line of work? A. Yes."

"(36) Q. Does the evidence show that all the men composing said gang had been engaged in like work for many months and were all competent and skilful? A. Yes."

"(46) Q. Does not the evidence show that the plaintiff had worked for about a year in that particular gang of men? A. Yes."

The defendant claims there is a variance between the pleading and the proof. The gravamen of the charge was that an insufficient block was negligently selected, and that the block selected was negligently adjusted. Although the petition ascribes to Hughes the selection of the block, which either Metzger or Hopwood picked out, the theory of the case was not changed and the negligent act alleged and proved was precisely the same. The additional negligence of a previously undisclosed person was not brought into the case as a new basis of recovery, as in *A. T. & S. F. Rld. Co. v. Irwin,* 35 Kan. 286, 10 Pac. 820. The rank or station of the employee making the selection was not a matter

of any consequence, all the workmen being coemployees, so that the naming of the person who happened to be foreman was not a matter of substance. The choice of a weak block by the man whose duty obligated him to select a strong one, whatever his position or name might be, was the material thing. Besides this, the individual who picked out the block and determined to use it was identified with such particularity that a description of him by name was not important. He was a member of a small group of employees, all of whom were named, who were at the time closely cooperating in the repair of the engine, and it seems almost fanciful that the defendant could have been misled with reference to the essential features of the plaintiff's cause of action or prejudiced in any way because the evidence disclosed that one man did something imputed to another. If the defendant was misled the record should contain the showing made to satisfy the trial court of the fact, and the specification of the particulars in respect to which it was thrown off its guard.

"No variance between the allegations in a pleading, and the proof, is to be deemed material, unless it have actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. Whenever it is alleged that a party has been so misled, that fact must be proved to the satisfaction of the court, and it must also be shown in what respect he has been misled, and thereupon the court may order the pleading to be amended upon such terms as may be just." (Gen. Stat. 1901, § 4567.)

Nothing of the kind appears. If the question of variance was presented to the trial court it was only under a demurrer to the evidence or a request for a peremptory instruction to find for the defendant, and no opportunity for amendment was offered. Under the statute this is not sufficient and the claim that a material and prejudicial variance occurred and was disregarded cannot be maintained.

Coupled with the matter of variance the defendant argues the proposition that there was a failure of

proof, in that Hughes did not select the block while the petition charges that the conduct of Hughes and Hopwood combined to produce the plaintiff's injury. Since the cause of action in the petition is sustained by proof that the block was negligently chosen, no matter who in fact made the choice, the exculpation of Hughes does not affect the merits of the plaintiff's case.

The defendant further argues that Hughes was guilty of no negligence; that if he was negligent it was in respect to nothing for which the defendant may be held responsible; that the jury regarded the negligence of Hughes as essential to a verdict in favor of the plaintiff (finding 37), and hence that there is a failure of necessary proof. Finding 37 merely enumerates all the shortcomings which the transaction disclosed and names all the delinquent individuals. When asked specifically upon what acts of negligence on the part of the defendant the jury based their verdict they answered: "By not securing a proper block and by not adjusting properly." (Finding 45.) Therefore, the verdict is not rested upon Hughes's negligent, superintendence, and it is not necessary to follow the defendant through the remainder of its argument under this head.

The defendant says it had no notice of the fact that a defective block was about to be used or was used, and in other respects argues the case as if it had relieved itself of liability when it provided competent workmen, a safe place to work, safe machinery, and solid oak blocks to choose from. The fallacy of this argument lies in the assumption that this is a defective-appliance case. It is a fellow-servant case. The petition is clear and emphatic that the negligence of the defendant of which plaintiff complained is the negligence of defendant's agents and employees in the performance of their duties. The negligence specified by the jury is not that the defendant failed to furnish a sound block of wood or a better lifting apparatus. It is negligent conduct on the part of an agent and employee in assorting the blocks furnished and in manipulating the one chosen.

This being true, the case is governed by section 1 of chapter 393 of the Laws of 1903, which contains the following provision:

"Every railroad company organized or doing business in this state shall be liable for all damages done to any employee of said company in consequence of any negligence of its agents, or by any mismanagement of its engineers or other employees, to any person sustaining such damage."

Under this statute the elements of a cause of action against a railway company are: Negligence of one employee in some matter connected with the operation of the road, and damages to another in consequence of such negligence. If, after the master's common-law duties are all performed, a skilled employee negligently chooses and uses an insufficient appliance, or makes a negligent use of an appliance sufficient if properly handled, and as a consequence another employee sustains damage, the master is responsible; and the statute makes no provision for notice to the master, in advance of the act, that the employee is about to do a careless thing.

The failure of the defendant in this part of its argument, and in that relating to assumption of risk, to discriminate between cases based upon a failure of the master to furnish safe tools and fellow-servant cases, and a further failure to discriminate fellow-servant cases arising under the statute from those arising at common law, has led to the citation of many authorities to no purpose. It is not necessary to review them in detail. They announce correct principles but they do not apply.

It is said the plaintiff assumed the risk of injury from the use of a wooden block. But the question is, Did the plaintiff assume the risk of injury through the negligence of the defendant's employees in picking out an insufficient block and carelessly adjusting it between the piston of the hydraulic ram and the deck-casting of the engine? Ordinarily a servant assumes the risk

of injury through the negligence of his coservants if the master has exercised due care in choosing them. The statute changes this rule so far as it affects railway employees engaged in the operation of the road, and such an employee assumes the risk of injury through the negligence of another only when he knows that the other is incompetent or habitually negligent and continues to work with him without protest and without inducement on the part of the employer that a change will be made. (See *K. P. Rly. Co. v. Peavey,* 34 Kan. 472, 8 Pac. 780.) In this case the plaintiff had no occasion to doubt the judgment, skill or prudence of his associates, and no reason to anticipate the careless conduct which produced his injury. (Third group of findings, *supra.*) The lapse in vigilance which caused the engine to fall was as surprising to him as it was to the foreman, whose own hands were caught and mangled, and the statute clearly applies.

An attempt is made to deduce assumption of risk from the plaintiff's experience and skill, his familiarity with the work to be done, with the use of the hydraulic ram, and with all the hazards usually attending the repair of an engine. But the plaintiff did not assume the risk of injury occasioned by the negligence of his coemployees. In cases not covered by the statute assumed risk does not include negligence for which the master is responsible (see *Emporia v. Kowalski,* 66 Kan. 64, 71 Pac. 232), and to hold that it does so in this case would be tantamount to a nullification of the statute.

According to the plaintiff's evidence it was no part of his duty to make a special investigation to ascertain what kind of a block was used or how it was placed. The engine was raised when he returned with the iron blocks, and he had no opportunity to see how it was supported. He acted under the direction of his foreman when he placed his arm in a position of danger. This evidence, considered in connection with the second

33—75 KAN.

group of findings quoted above, entirely disposes of the defense of contributory negligence.

The special findings are amply supported by the evidence, are apparently fair and candid, are entirely consistent with each other, and are in harmony with the general verdict.

The statement by witness Hughes that he did not observe the position of the plaintiff's hand amounted to a practical withdrawal of the statement he had just before made. Even if this did not appear to be the effect of the testimony the court would not assume that the jury were driven to a verdict by the expression of a supposition by a witness who immediately added that he did not know the fact. That other testimony asked to be stricken out did not affect the verdict is shown by the special findings designating the negligence upon which the verdict was predicated.

The requested instructions were either properly refused or given in substance. No. 1 left out of account the very negligence upon which the action was based— that of fellow-servants. No. 2 placed all responsibility for his safety upon the plaintiff, practically eliminated the foreman from the job, decided for the jury—but against the plaintiff's evidence—what some of the plaintiff's duties were, assumed facts to be true which the jury found not to be true, and was sufficiently involved to be misleading. The vice of Nos. 3 and 5 is apparent from what has already been said with reference to the difference between cases prosecuted on account of the failure of the master to provide safe tools and statutory actions based upon the negligent conduct of servants and agents. Nos. 6 and 7 were covered by instructions given.

The verdict was not excessive, and the judgment of the district court is affirmed.