C. BRICE-NASH v. THE BARTON SALT COMPANY.

No. 15,711. (98 Pac. 768.)

SYLLABUS BY THE COURT.

MASTER AND SERVANT — *Injury to Employee — Non-delegable Duty of Master.* Where the method adopted by a salt company for carrying on its business involves the occasional dislodging of masses of salt, thereby covering the floor of a room with fragments moving with such force as to expose to danger employees who are there in the discharge of their

duties, and the only adequate way to protect them from such danger is to warn them just before such dislodgment, the giving of such warning is a non-delegable duty of the employer,. and its omission imposes a liability for any consequent injury to an employee, regardless of any question of co-service.

Error from Reno district court; PETER J. GALLE,. judge. Opinion filed December 12, 1908. Reversed.

*F. Dumont Smith,* and *Fairchild & Lewis,* for plaintiff in error.

*William Warner, O. H. Dean, W. D. McLeod,* and *H. C. Timmonds,* for defendant in error.

The opinion of the court was delivered by

MASON, J.: C. Brice-Nash sued the Barton Salt Company for damages on account of injuries received while in its employ. A demurrer to his evidence was sustained, and he prosecutes error. The evidence tended to establish these. facts:

The defendant is engaged in manufacturing, refining and selling salt. The plaintiff was its bookkeeper. His. duties required him at times, for the purpose of procuring information, to go into the packing-room, which was partly filled with salt, which rose nearly perpendicularly to the height of about twelve feet. The practice was for the workmen from time to time to pick the face of the salt with long bars until it caved off in quantities suitable for packing in sacks and barrels. When they were looking for a fall while the plaintiff was present they would tell him to look out—to keep away. On the day of the accident he came into the packing-room to inquire about a shipment. He spoke to Mr. Swofford, the foreman of the room, and Mr. White, a. workman there. He noticed that the salt was undermined. They told him that they had been trying to get it down, but did not say they were then looking for it to fall. He understood they were not looking for a fall. While he was standing with his back to the salt,

talking with Swofford, who faced it, White prodded it with his bar, nothing having been said about resuming work, and no warning having been given, and it caved off, catching the plaintiff, throwing him against a post, and causing·him serious injury.

The principal contention of the defendant is that Swofford and White, whose failure to give warning of the resumption of work and the consequent caving off of the salt is the negligence complained of, were fellow servants of the plaintiff, and that his recovery was properly denied on that account.   Whether the relation each bore to their common employer was such as to bring them within the scope of the rule invoked need not be determined, for we hold that the evidence would have justified a finding that the defendant owed a positive and non-delegable duty to the plaintiff, under the circumstances stated, to give him warning that an immediate fall of the salt was to be expected.   A situation involving a somewhat similar question was presented in *Belleville Stone Co. v. Mooney,* 60 N. J. Law, 323, 38 Atl. 835, the decision of the supreme court being indicated by the seventh paragraph of the syllabus, reading as follows:

"Where the system of the working of a stone quarry was one whereby no protection was afforded to the workmen engaged in another portion of the quarry apart from the blasting, from injury from flying stones, caused by the explosions of the blasts in the rock, except the warning word, 'Fire,' given at the time the fuse was communicated to the explosives of the blast, and one of the rules of the master was that no employee should leave his work to seek safety from the dangers of the blast until the warning, 'Fire,' was given by the foreman, whose duty it was to light the fuse, it became and was the duty of the master in the exercise of reasonable care to have such warning announced sufficiently long enough before the explosion for such workmen or employees, in the exercise of ordinary care, to reach a place of safety; and this duty being delegated to such boss or foreman does not relieve the master from the liability to answer for the neglect of

the boss or foreman to perform that duty.  This neglect is not an incidental act of the coservice."

The case was taken to the court of errors and appeals, and there affirmed, the grounds of the decision being thus stated:

"Two views are suggested; one on behalf of the plaintiff, that the giving of proper warning was an essential part of the duty owed by the employer to the workmen, of taking reasonable care that the places where the workmen were engaged should be kept safe, and therefore, if through negligence the proper warning was not given, the employer's duty was not performed; the other, on behalf of the defendant, that the giving of the warning was only incidental to the foreman's work in preparing the blast and lighting the fuse, in which work the foreman was clearly a fellow servant of the plaintiff engaged in a common employment, and therefore his negligence in that incidental service was not chargeable upon the common master.

"On reflection it will be perceived that the giving of warning bore no direct relation to the foreman's work in preparing and firing the blast.  The object of that work was the removal of rock, and such object would be attained as well without the warning as with it, if we leave out of consideration the safety of the workmen.  Quite different are the conditions where a person using a tool or machine is obliged to see that the implement remains fit for use.  In such case the duty to examine is auxiliary and incidental to the duty to use, and when a servant owes the latter duty to his master he owes the former also.  A failure to perform carefully this incidental duty of examination may result in damage to a fellow servant, but the common master is not responsible for such damage, because the duty neglected was not one owed by him outside of that duty.  There may have been a similar duty of inspection owed by the master to his servants, but the duties themselves are distinguishable from each other.  In the present case, however, as already pointed out, the duty to give warning was not in any such sense subservient to the blasting of rock.

"On the other hand, when we consider the general duty owed by an employer to his employees to exercise reasonable care that the place where he sets them to

8—79 KAN.

work shall be kept safe (*Van Steenburgh v. Thornton,* 58 N. J. Law, 160, 33 Atl. 380), the propriety of including therein the duty of giving warning in such circumstances as those now before us becomes at once apparent. The danger of blasting was one frequently recurring, and its occurrence could always be foreseen, not by the workmen scattered about the quarry, but by any person charged with the duty of watching for it. If the danger was not foreseen and proper warning given, the quarry became an unsafe place for the workmen, but it was made reasonably safe if such warning was given. It seems clearly to follow that on him whose duty it was to take care that the place should be kept safe was cast the duty of giving timely warning. We conclude, therefore, that it was part of the defendant's duty to the plaintiff that proper care should be exercised in giving warning of an expected blast. In selecting the person who was to fire the blast as the person to give the warning, the defendant probably chose the man best able to perform that duty, but as the defendant's responsibility extended beyond the selection of an agent and included the warning itself, it must answer for negligence in the giving of warning, no matter how fit was the chosen agent." (*Belleville Stone Co. v. Mooney,* 61 N. J. Law, 253, 254, 39 Atl. 764, 39 L. R. A. 834.)

We regard this reasoning as sound in itself, and as consistent with the rules on the subject which have gained general recognition by the courts. However, in a note published in 54 L. R. A. it is said, referring to this decision:

"All the authorities, with the exception of the single New Jersey case cited,  .  .  .  seem to be agreed that a master is not liable for the negligence of a servant in failing to notify a coemployee of the approach of a transitory peril which, as the work progresses, will render the environment unsafe for a brief period, but which may easily be avoided if due warning is given. In some of the cases illustrating this principle the breach of duty was committed by failing to notify the injured servant himself that his safety was imperiled by the particular peril in question." (Page 120.)

This language is repeated by the author of the note

in his work on "Master and Servant." (2 Labatt, Mast. & Serv. § 601.)   While there is undoubtedly a conflict in the authorities, the New Jersey case does .not stand alone.   It is cited with approval, with other cases of the same tendency, in *Brick Co. v. Shanks,* 69 Kan. 306, 76 Pac. 856, where the principle it announces was applied.   Some of the apparent conflict in the decisions can be eliminated upon considerations which were there thus stated:

"In some cases it may be said that if the conduct of an enterprise involve the giving of monitory signals in passing progressively from detail to detail of the work, and the person set to give the signal be carefully chosen, the company will not be bound if he fail in his duty.   An injured workman and the person employed to give the signal may then be said to be engaged in the discharge of duties so intimately related and so combinedly directed to a common end that the one must be on his guard with reference to the conduct of the other; the warning becomes a part of the service itself—which is something entirely distinct and separate from the things the master must do to make the service and the place in which it is performed reasonably safe.   But whenever a negligent act violates any duty which the master himself owes to the servant, as, for example, the duty to make the service and the place in which it is performed reasonably safe, that fact controls, irrespective of the rank or grade of service between employees, and notwithstanding the circumstance that they are engaged in a common employment directed to a common end; and if, in the discharge of the master's duty, a warning be necessary, it is not enough for him to say that he has provided a competent person to give it; the warning must be given." (Page 309.)

The New Jersey case is expressly disapproved in *McLaine v. Head & Dowst Co.,* 71 N. H. 294, 298, 52 Atl. 545, 93 Am. St. Rep. 522, 58 L. R. A. 464, and in *Kelly Island Lime & Transport Co. v. Pachuta,* 69 Ohio St. 462, 69 N. E. 988, 100 Am. St. Rep. 706.   In the former case, however, there is a strong dissenting opinion, in which the authorities are carefully reviewed

in what seems a successful effort to show that the doctrine repudiated by the majority of the court is in accordance with precedent as well as with reason. The case of *Belleville Stone Co. v. Mooney,* 61 N. J. Law, 253, 39 Atl. 764, 39 L. R. A. 834, is cited with approval in a dissenting opinion in *Ward v. Naughton,* 74 N. Y. Supr. Ct., App. Div., 68, 77 N. Y. Supp. 344, where the facts are quite similar to those of *Plaster Co. v. Reedy,* 74 Kan. 57, 85 Pac. 824, where a conclusion was reached directly in conflict with that of the New York court. (See, also, *Donk Bros. Coal Co. v. Thil,* 228 Ill. 233, 81 N. E. 857.)

In the present case the evidence had some tendency to show that the plans of operation adopted by the defendant company contemplated that at irregular intervals the bank of salt should be undermined and the detached portion permitted to fall down and roll across the floor of the packing-room in such manner, in such quantity and with such force as to expose the plaintiff to injury while in the performance of his duties; that the only way by which he could be adequately protected was by warning him when the avalanche was to take place; that the danger did not arise from the method, negligent or otherwise, in which the workmen performed the duties assigned to them in which they had freedom of action, but inhered in the general mode in which the company carried on its business; and that, in the absence of a due warning, the place was not a safe one in which to work. If these conditions existed the failure to give the notice was an omission of one of the positive, affirmative obligations of the employer, rendering him liable, irrespective of the relation of the employees to each other. Whether they did exist was a question that should have been submitted to the jury.

The petition described the negligent act complained of as that of White. Under the evidence the plaintiff relied largely upon the failure of Swofford, the fore-

man, to give the warning. It is urged that on the demurrer the only question was whether the evidence tended to support the exact case presented by the pleading. The trial court, however, in announcing the ruling placed it upon the ground that the plaintiff's injury was due to the act of a fellow servant. While the assigning of an untenable reason will not warrant reversing a decision if it can be justified upon other considerations, it would be manifestly unfair to non-suit the plaintiff on account of a variance in proof without giving him an opportunity to amend. Moreover, the variance, especially in view of what has been said already, is of little importance. (See, in this connection, *Railway Co. v. Green,* 75 Kan. 504, 89 Pac. 1042.)

An argument is also made that the plaintiff ought not to recover on the strength of no warning having been given him, inasmuch as his own testimony showed that he understood the salt might fall at any time and thought he was far enough away to be safe, and that he heard the noise of White's pick as he resumed work and was by that means notified of the probable fall. These and other matters of the same general character discussed in the brief are really considerations to be presented to the jury. It does not conclusively follow from what the plaintiff said that he would have been satisfied with his position if he had known the fall was coming; and it may be that even where he stood he could have saved himself, if he had had timely warning, by stepping to one side so as to avoid being caught against the post. Although he testified that he heard a noise which he afterward concluded was made by White's pick, he did not say that he identified it as such at the time.

The judgment is reversed and a new trial ordered.