GEORGE G. GRIFFIN *et ux., Appellants,* v. THE FREDONIA BRICK COMPANY, *Appellee.*

No. 16,921.

SYLLABUS BY THE COURT.

1. MASTER AND SERVANT—*Duty of Master to Provide Safe Place to Work.* It is the duty of a brickmaking company which mines shale by means of a steam shovel to use reasonable care to put the rough bank produced by the operation of the steam shovel in a condition, and to keep it in a condition, which will render the work of employees necessarily performed in proximity to the bank reasonably safe from all caving naturally to be anticipated in consequence of the excavation.

2. ——— *Assumption of Risk.* When it is said that workmen assume the risk of injury from the spontaneous caving of banks, the falling of shale, earth and rock loosened by natural agencies, and other perils inhering in work about a shale pit, the contingencies referred to are those which arise after the master has used reasonable diligence to make the place reasonably safe.

3. ——— *Negligence—Injury to Employee.* The evidence examined and found to be sufficient to justify a jury in finding that the defendant was guilty of actionable negligence.

Appeal from Wilson district court. Opinion filed March 11, 1911. Reversed.

*P. C. Young, W. H. Edmundson,* and *F. M. Woodard,* for the appellants.

*J. T. Cooper, H. P. Farrelly,* and *T. R. Evans,* for the appellee.

The opinion of the court was delivered by

BURCH, J.: The Fredonia Brick Company, the appellee, manufactures brick from shale taken from the earth by means of a steam shovel. The steam shovel is operated on a track built for the purpose. Beside this track, and elevated somewhat above it, is another track, on which are operated small cars which receive the shale from the steam shovel. These cars run down into the shale pit by force of gravity, are stopped beside the steam shovel by an employee who rides them for that purpose, and after they are loaded are drawn up to the manufactory by a cable. Over the shale bed is a layer of clay and top dirt, in which there is rock. As the steam shovel moves forward in the work of excavating the shale a rough and ragged wall is left behind, extending parallel with the tracks and rising to the height of twenty-four or twenty-five feet above the steam-shovel track and twenty or twenty-one feet above the car track. The principle governing the operation of the steam shovel causes it somewhat to undermine the bank.

Loren E. Griffin, a minor, and unmarried, was employed by the appellee to ride cars down into the pit. In the forenoon of November 30, 1907, he was killed by a mass of clay and rock which fell from the bank just as the car in which he was riding approached the steam shovel. His parents, the appellants, sued for damages. A demurrer was sustained to their evidence, on the ground that no negligence was shown, and they appeal.

The law applicable to the case is clear. It was the duty of the appellee to use reasonable care to put the bank in a condition and keep it in a condition which

would render the operation of cars on the car track reasonably safe from all caving naturally to be anticipated in consequence of the steam shovel's work; and this duty required that the bank be inspected with the care and frequency which reasonable prudence demanded, under all the conditions presented.

The appellee quotes from the opinion in *Brick Co. v. Shanks,* 69 Kan. 306, as follows:

"The risk of danger from the spontaneous caving of banks, from the falling of blocks of shale loosened by natural agencies, and from other similar causes, was doubtless assumed. Such perils inhered in the work and could be foreseen by the men as well as by the master." (p. 309.)

The contingencies there referred to are those which arise after the master has used due diligence to make the place where work is performed reasonably safe. Such diligence extends to guarding against all perils within the range of reasonable foresight. After that diligence has been exercised the workmen assume the hazards inhering in and naturally incident to the employment. They have the same foresight respecting such matters that the master possesses, and are just as able as he to protect against them.

Such being the law, the question is whether there was evidence sufficient to go to the jury that the master failed in the performance of its duty.

Thomas Shay was charged with the duty of looking after the bank. After noon of the day preceding the casualty he went to the top and pushed down, as he thought, whatever loose stuff he could that seemed likely to fall. His tools were a pinch bar and a big gas pipe, sharpened. He worked until he got tired, then went back into the pit, and did not return to the top of the bank. While engaged in this work he saw a boulder, or lump, sticking out from the wall at a place some three or four feet below the top, which he could not get down with the tools he was using. He says he

thought the wall was safe, and he worked under the projection after he returned to the pit. But, while he made no further inspection of the wall, he says he "watched it close." It was this projection which fell. It contained a rock weighing probably one hundred pounds, which struck the car boy on the head. Shay says the projection must have broken at the top first, because it did not simply slip down, but it pitched out from the wall and over the car the boy was riding. The bank was likely to crack open at the top and pitch forward, and inspections once a day, anyhow, and sometimes oftener, were made to discover these indications of danger. Cracks were usually visible for some time before the loosened portions of the bank would fall, and the only place to make a proper examination for them was at the top of the bank. Watching from below was not sufficient. The caving did not in this instance extend from the very top, but the lump stuck out in a way to cause it to act the same as the top of the bank. Shay had worked at the pit some three or four years and was fully aware that the bank would crack open and pitch forward. It would do this as far back as thirty feet behind the steam shovel.

From this evidence the jury might well have concluded that the lump, or boulder, was a menace from the time the steam shovel left it projecting from the wall; that Shay was cognizant of the danger, made an insufficient attempt to remove it, and continued in a state of apprehension concerning it; that he did not display reasonable prudence in merely watching from the bottom of the pit and taking chances, as he did; that he ought to have made a further attempt, with appropriate tools, to throw the projection down; and that in any event he ought to have gone to the top the next morning to see if cracks, the usual premonition of caving, had appeared. It is true that there was much in other portions of the evidence to indicate that Shay was not at fault, but the court is not permitted on a

demurrer to the evidence to weigh fact against fact and inference against inference.   That is the province of the jury.

The judgment of the district court is reversed, and the cause is remanded for a new trial.