Elma A. SCOTT, Respondent,

v.

Gordon O. NORMAN, Appellant.

No. 50723.

Supreme Court of Missouri,

Division No. 1.

March 8, 1965.

Motion for Rehearing or to Transfer to Court En Banc Denied July 12, 1965.

Jack Z. Krigel, Kansas City, for respondent.

Clem W. Fairchild, James F. Stigall, Kansas City, Linde, Thomson, VanDyke, Fairchild & Langworthy, Kansas City, of counsel, for appellant.

WELBORN, Commissioner.

This is an action for damages for personal injuries sustained by the plaintiff while employed by defendant as a housekeeper when she fell through the ceiling of defendant's garage to the floor below. Damages were sought in the amount of $75,000.00. The jury returned a $20,000 verdict in favor of plaintiff. Defendant's after-trial motions for judgment notwithstanding the verdict and, in the alternative, for a new trial were overruled. However, the trial court did order a new trial on the issue of damages only. The defendant, as he had a right to do (Page v. Hamilton, Mo.Sup., 329 S.W.2d 758, 762(3), Stith v. St. Louis Public Service Co., 363 Mo. 442, 251 S.W.2d 693, 695(5),

34 A.L.R.2d 972), has appealed from this order. The amount in dispute is within the jurisdictional limit of this court.

The accident in question occurred on May 13, 1961 at defendant's residence in Leawood, Kansas. Defendant, a widower, had, in January, 1961, employed plaintiff as housekeeper, cook and domestic servant in his home. Plaintiff had been in the home thereafter continuously until the date of her fall. Defendant's one-story ranch type residence had an attached garage above which there was an attic used for storage. Access to the attic was by way of a finished stairway, entry to which was through a door in the garage. The garage ceiling was of plasterboard attached to the underside of 2 x 6" or 2 x 8" joists. There was no floor or other covering over the joists. Persons entering the attic were obliged to proceed along the 2-inch edges of the joists, which were on 24-inch centers.

When plaintiff was shown through the premises by the defendant prior to her employment, the defendant showed plaintiff the storage space in the attic. According to plaintiff, defendant cautioned her to be careful should she have occasion to enter that area. Plaintiff had, she stated, been in the attic some twelve times prior to the occasion on which she fell. Her other visits had been without incident.

On the morning of May 13, 1961, plaintiff went to the attic to obtain a book for use in assisting the defendant's 10-year old daughter with her school work. According to the plaintiff, she stepped out on the joists to a box where the book was located, stooped over and picked up the book. She then lost her balance, slipped from the joists and fell through the plasterboard to the concrete floor of the garage ten feet below. She suffered injuries, the nature and extent of which need not be detailed.

The basis of liability for the plaintiff's action was the failure of defendant to provide plaintiff with a reasonably safe place to work. No question is here raised as to whether or not plaintiff was authorized to enter the attic or as to whether or not on the occasion of her fall she did enter the attic in the course of her employment.

On this appeal, appellant urges first that his motion for judgment should have been sustained on the grounds that no negligence on his part was shown and that any injury which plaintiff suffered was the result of the risk of her employment which she assumed.

The defendant's liability is to be determined according to the law of the State of Kansas. We are cited no Kansas cases dealing with the standard of care to be exercised by an employer toward his household employees. However, "the general common-law principles governing the liability of a master for injury to his servant have been applied in the cases involving domestic servants, and accordingly it has been held that the master is required to exercise reasonable care to furnish the servant with a reasonably safe place in which to work * * *. On the other hand, it has been recognized that in the absence of a statute providing otherwise, a domestic servant assumes the risk of dangers which are normally incident to the employment * * *." Annotation 49 A.L.R.2d 317, 319–323.

In our opinion, plaintiff's evidence made a submissible case on defendant's failure to provide plaintiff a reasonably safe place to work. Defendant's warning to plaintiff when she was employed shows that defendant was aware of the dangers to be encountered upon entering the attic. In a portion of defendant's deposition which plaintiff introduced in evidence, the defendant stated he felt that a person using the attic could maintain his balance by holding to the rafters under the roof. However, he acknowledged that his unusual height of 6' 6" made it possible for him

to do so and that a person of lesser height might not have been able to use the rafters at all places in the attic. Although the plaintiff's height is not shown, the jury having an opportunity to see her might well have concluded that a person of her height would have been unable to use the rafters to maintain her balance. Under all of the evidence, we think it was for the jury to determine whether or not the defendant had fulfilled his duty to provide plaintiff with a reasonably safe place to work.

The question remains whether or not plaintiff as a matter of law is entitled to recover in this case by reason of the doctrine of assumption of risk. In Blackmore v. Auer, 187 Kan. 434, 357 P.2d 765, 773, the court stated: "The assumption of the usual risks of an employment is not ordinarily a jury question. It is a matter of law. It is only where the risk is or may be unusual that a jury question can arise; and even in such cases, if the risk though unusual is obvious, such as an ordinarily prudent man could appreciate and understand, the workman who persists in the employment assumes the risk of it."

The plaintiff contends that, if the defendant was negligent, and we have concluded that the jury might have so found, the doctrine of assumption of risk cannot be applied to defeat the plaintiff's recovery for injury attributable to such negligence.

With all due respect for the courts of our sister state, we must state that we do not find the law of the State of Kansas entirely clear in this respect. We add that the situation in Kansas is in no manner unique. Uncertainty and ambiguity are among the most frequently mentioned attributes of the doctrine of assumption of risk in practically all jurisdictions.

In Missouri, the courts at an early stage in the development of the law of master and servant (Devlin v. The Wabash, St. L. P. Ry. Co. (1885), 87 Mo. 545) adopted what has come to be known as the "Missouri Doctrine." Under this doctrine, in an action by a servant for injury based upon negligence of the master, the showing of negligence on the latter's part precludes his reliance upon the servant's assumption of the risk. Negligence, causation and injury being proved, liability upon the part of the master may be avoided only on the grounds of contributory negligence of the servant. For some time this doctrine was regarded as peculiar to Missouri and North Carolina. However, in recent years at least two other jurisdictions have accepted it. See Siragusa v. Swedish Hospital, 60 Wash. 2d 310, 373 P.2d 767, 38 Wash.Law Review 349; Ritter v. Beals, 225 Or. 504, 358 P.2d 1080. Attention is also called to Meistrich v. Casino Arena Attractions, Inc., 31 N.J. 44, 155 A.2d 90, 82 A.L.R.2d 1208. This case, although not a master-servant case, discusses the relationship between the doctrine of assumption of risk and contributory negligence.

In the case of Lee v. Missouri Pacific R. Co., 195 Mo. 400, 92 S.W. 614, the court en banc examined the Kansas law regarding assumption of risk. In discussing the applicable law of Kansas, the court stated (92 S.W. 619): "We have gone through the Kansas cases cited by appellant, and also those cited by respondent, to discover what difference, if any, there is in the law of that state and our law in reference to the liability of the master to the servant in such case, and we discover no material difference. The Kansas court has not, in the cases that we have seen, emphasized the distinction between contributory negligence and assumption of risk as we have done, but in the main it has declared the law as we have declared it." The Kansas case primarily relied upon was Emporia v. Kowalski, 66 Kan. 64, 71 P. 232.

The author of a note in 28 L.R.A. (N.S.) 1215, on the subject, "May servant assume the risk of dangers created by the master's negligence" takes issue with the Missouri court's conclusion with respect to the Kan-

sas law. The writer of the note states: "The so-called Missouri doctrine has never acquired the slightest ·foothold in * * Kansas * *." A year following the Missouri ·court's decision in the Lee case, the Kansas Supreme Court, in Kansas City, M. & O. Ry. Co. v. Loosley, 76 Kan. 103, 115, 90 P. 990, 995, stated: "In Missouri and perhaps in some other jurisdictions an attempt has been made to engraft the rules of contributory negligence upon assumption of risk after the master's neglect or refusal, upon complaint, to remedy conditions negligently suffered to exist, and the authorities to that effect are invoked here. Such a rule is arbitrary with the court adopting it, and for the reasons stated is unsound."

Examination of the Kansas cases does reveal the use of language in some of them quite similar to that employed in the decisions of the courts of this state. In Kowalski, cited in the Lee case, supra, the court stated (71 P. 234) : "It is contended that the defendant assumed the risk of injury from the falling of the pole, and therefore he cannot recover. While it is true the employé assumes the ordinary risks incident to his employment, the risks thus assumed by him are those only which occur after the due performance by the master of those duties which the law imposes upon him." Compare this with the language employed in Goodwin v. Missouri Pacific R. Co., 335 Mo. 398, 72 S.W.2d 988 and Hines v. Continental Baking Co., Mo.Sup., 334 S.W.2d 140.

The plaintiff in support of her contention that under Kansas law an assumed risk does not include negligence for which the master is responsible cites Griffin v. Fredonia Brick Company, 84 Kan. 347, 114 P. 217 and Missouri, K. & T. Ry. Co. v. Green, 75 Kan. 504, 89 P. 1042. The court in the latter case did state (75 Kan. 513, 89 P. p. 1045) : "In cases not covered by the statute assumed risk does not include negligence for which the master is responsible." Citing Emporia v. Kowalski, supra. However, the actual question presented in Green was whether or not an employee assumed the risk of negligence of a fellow employee and the court held that a statute precluded application of the doctrine of assumed risk in the case. Griffin involved the death of an employee in a shale pit resulting from rock overhanging the track on which the cars in which the defendant rode traveled. The court did refer to assumptions of risk of dangers "which arise after the master has used due diligence to make the place where work is performed reasonably safe." 84 Kan. 349, 114 P. 217. However, there was no basis for application of the doctrine of assumed risk in that case because there was no showing that the employee was in any way aware of the dangerous condition which produced his death.

Although the language employed in the above cases and others might lend support to the proposition urged by the plaintiff, the actual decisions do not because under the facts of the cases the doctrine of assumption of risk was not applicable.

In Kowalski, cited by the Missouri court as evidencing that the law of Kansas and Missouri was the same, the factor causing the injury was one of which the employee had no knowledge or reason to know. Concerning the defect of the pole which fell injuring plaintiff, the court stated: "(T)he defect in the pole was not patent nor observable, and was not known and could not have been observed by him in the exercise of ordinary care in the performance of his duties." 66 Kan. 71, 71 P. p. 234. Furthermore, in addition to the statement quoted in the Lee case, the Kansas court stated: "If, however, the place is dangerous, or the tools and appliances furnished are unfit for the use for which they are intended, and these facts are within the knowledge of the employee, or are so plainly observable that, in the exercise of reasonable care, he should have discovered the danger therefrom, and he continues in the service without objection or without promise of repair, he is properly held to assume the risk." 66 Kan. 67–68, 71 P. p. 233.

■ Our review of Kansas authorities, including Rush v. Mo. Pac. R. Co., 36 Kan. 129, 12 P. 582; Atchison T. & S. F. R. Co. v. Schroeder, 47 Kan. 315, 27 P. 965; Southern Kansas R. Co. v. Drake, 53 Kan. 1, 35 P. 825; Morbach v. Home Mining Co., 53 Kan. 731, 37 P. 122; Walker v. Scott, 67 Kan. 814, 64 P. 615; Schwarzschild & Sulzberger v. Drysdale, 69 Kan. 119, 76 P. 441; Kansas City, M. & O. Ry. Co. v. Loosley, supra; Barnett v. United Kansas Portland Cement Co., 91 Kan. 719, 139 P. 484; Ernst v. Chicago G. W. R. Co., 105 Kan. 706, 185 P. 1053; McMullen v. A. T. & S. F. R. Co., 107 Kan. 274, 191 P. 306; Hollingsworth v. Berry, 111 Kan. 730, 207 P. 841; Lively v. Chicago, R. I. & P. R. Co., 115 Kan. 784, 225 P. 103; Luebken v. City of Hanover, 129 Kan. 443, 283 P. 501, leads us to conclude that the Kansas courts have followed the rule generally followed in other jurisdictions, which has been stated as follows: "A servant who, either before or after he commences the performance of the contract of employment, has ascertained, or ought, in the exercise of proper care, to have ascertained, that the ordinary hazards of his environment have been augmented by abnormal conditions produced by the negligence of his master or of his master's representative, and has accepted or continued in the employment without making any objection and without receiving any promise that the abnormal conditions will be remedied, is deemed, as a matter of law, to have assumed the risk thus superadded, and to have waived any right which he might otherwise have had to claim an indemnity for injuries resulting from the existence of that risk." 3 Labatt, Master and Servant, 2d, Section 1182, pages 3171–3176.

■ In Kansas, as elsewhere, the advent of workmen's compensation has obscured to a considerable degree the prominence once attached to the doctrine of assumption of risk. However, examination of more recent Kansas cases such as Fishburn v. International Harvester Co., 157 Kan. 43, 138 P.2d 471; Cruzan v. Grace, 165 Kan. 638,

198 P.2d 154; Kleppe v. Prawl, 181 Kan. 590, 313 P.2d 227, 63 A.L.R.2d 175; Taylor v. Hostetler, 186 Kan. 788, 352 P.2d 1042; Blackmore v. Auer, 187 Kan. 434, 357 P.2d 765, and Concannon v. Taylor, 190 Kan. 687, 378 P.2d 82, some of which continue to employ language similar to that in Kowalski, does not persuade us that the law in Kansas is otherwise than as above stated. We have been cited to and find no Kansas decision directly holding that under the law of that state an employee does not assume the risk arising from negligence on the part of his employer. We therefore conclude that the doctrine of assumption of risk is applicable in this case.

■ In determining in this particular case whether or not plaintiff is precluded from recovery by virtue of such doctrine, the evidence is to be viewed in a light most favorable to the plaintiff. However, admissions by her are binding and conclusive upon her if uncontradicted or unexplained. Blackmore v. Auer, 187 Kan. 434, 357 P.2d 765, 771(10).

In this case the photographic evidence and the plaintiff's testimony clearly reveal that the condition of the attic was open and obvious. The plaintiff acknowledged that she was aware that if she stepped on the plasterboard she would fall through it. She acknowledged without explanation that on her deposition she had stated: "I was well aware that this plasterboard would not hold 180 pounds, which was the weight I had." The plaintiff had been in the attic some twelve times previous to the time when she fell.

■ Plaintiff must, in order to be barred by assumption of risk, not only have knowledge of the defect but also must have a full understanding of the risk created by the defect. Shufelberger v. Worden, 189 Kan. 379, 369 P.2d 382, 385; Atchison T. & S. F. R. Co. v. Bancord, 66 Kan. 81, 71 P. 253; King v. King, 79 Kan. 584, 100 P. 503. Here the danger, i. e., the uncovered joists, was open and obvious. The risk

involved in going upon them was that a person would slip therefrom and fall through the thin plasterboard ceiling. The plaintiff's statements that she was not "fully aware" of the risks until after her fall are inconsistent with her admission that she knew that the plasterboard would not hold her weight. This unexplained admission is binding upon the plaintiff and her statements, likewise unexplained, at the trial that she did not "fully understand" the risk were insufficient to give rise to an issue for determination by a jury.

Plaintiff argues that the risk involved was an unreasonable one and, therefore, was not assumed by her. The doctrine of assumption of risk does not depend upon the reasonableness or unreasonableness of the risk involved. Its basis is the employee's knowledge and appreciation of the danger and of the risk attendant thereto and his continuation in the employment despite his knowledge. Shufelberger v. Worden, 189 Kan. 379, 369 P.2d 382, cited by plaintiff in this regard, was not a case in which the doctrine was applied.

This case does not present, as plaintiff contends, a situation of greater knowledge on the part of the employer. Although defendant had been familiar with the attic for a longer period of time than plaintiff, plaintiff's familiarity was of sufficient duration to apprise her of its condition and of the risks attendant thereto.

Plaintiff also contends that she was acting with reasonable prudence in executing an order to assist defendant's daughter with her school studies and that she will not, therefore, be charged with assumption of the risk. Plaintiff testified that the trip to the attic was undertaken on her own initiative. She was not ordered by defendant or even by defendant's daughter to go there. The principle which plaintiff would apply is not applicable in this case.

In our opinion, the dangers inherent in the condition of the attic and the risks attendant to such condition were obvious and known to the plaintiff. Although the plaintiff did state that she had complained to the defendant's 10-year old daughter about the condition of the attic, there was no evidence that the defendant had promised the plaintiff to change the conditions there. In our opinion, under the Kansas law, plaintiff must be held as a matter of law to have assumed the risk and, therefore, is not entitled to recover.

The order of the trial court awarding new trial on the issue of damages is set aside and the cause remanded to the trial court with directions to enter judgment for defendant in accordance with his motion therefor.

HOUSER and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.